**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| MOTION GAMES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No 6:12-cv-00878 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| NINTENDO CO., LTD.; NINTENDO OF | ) | |
| AMERICA INC.; RETRO STUDIOS, INC.; | ) | |
| RENT-A-CENTER, INC.; AND GAMESTOP | ) | |
| CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Motion Games, LLC, by and through its attorneys, hereby files this First Amended Complaint for Patent Infringement against Defendants Nintendo Co., Ltd. ("Nintendo"), Nintendo of America Inc. ("Nintendo of America"), Retro Studios, Inc. ("Retro"), Rent-A-Center ("RAC"), and GameStop Corporation ("GameStop"), as set forth below.

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin further infringing acts and obtain damages resulting from Defendants' infringement of one or more claims of United States Patent No. 6,167,607 ("the '607 Patent"), entitled "Vision Target Based Assembly";  one or more claims of United States Patent No. 7,843,429   ("the '429 Patent"), entitled "Interactive Video Based Games Using Objects Sensed by TV Cameras";  and one or more claims of United States Patent No. 7,756,297 ("the '297 Patent"), entitled "Camera Based Sensing in Handheld, Mobile, Gaming, or Other Devices (collectively, "the Patents")

2.      This action for patent infringement involves Defendants' manufacture, use, sale, offer for sale, lease, offer for lease, and/or importation, directly and indirectly, into the United States of infringing products, components, software, methods, processes, services, and systems that are primarily used or primarily adapted for use in an interactive video gaming system that is covered by one of more claims of the Patents.  Defendants' acts constitute direct, contributory and/or induced infringement of the '607 Patent, the '429 Patent, and the '297 Patent.

3.      Plaintiff has been irreparably harmed by Defendants' direct and indirect infringement of its valuable patent rights.  Moreover, Defendants' unauthorized, infringing use of Plaintiff's patented systems and methods has threatened the value of its intellectual property because Defendants' conduct results in  loss of Plaintiff's lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing, directly and indirectly, the patented products, components, software, methods, processes, services, and systems.

<u>**PARTIES**</u>

4.      Motion Games, LLC is a Texas Limited Liability Corporation with a principal place of business at 800 Brazos St, Suite 400, Austin, Texas 78701-2548.

5.      Motion Games, LLC, by assignment, owns and controls all right, title, and interest in and to the '607 Patent, including the right to recover damages for past infringement.

6.      Dr. Timothy R. Pryor is the sole inventor of the Patents.  He is a pioneer and inventor of numerous patents and applications in the fields of computer vision, computer-human interaction and interactive video games.

**Nintendo Defendants**

7.      Defendant Nintendo is a corporation organized and existing under the laws of Japan and maintains a principal place of business at 11-1 Kamitoba Hokotate-cho, Minami-ku, Kyoto 601-8501 Japan.

8.      Nintendo is in the business of developing, manufacturing, marketing, importing, distributing, leasing, and/or selling, directly and indirectly, electronic video game hardware, software, and accessories for use with or on Nintendo's Wii gaming console and system (including the Wii Motion Plus) and for Nintendo's 3DS gaming console and system.

9.      Defendant Nintendo of America is a corporation organized and existing under the laws of Washington and maintains a principal place of business at 4820 150th Avenue, NE, Redmond, WA 98052.  Nintendo of America is a wholly-owned subsidiary of Nintendo.

10.      Nintendo of America is in the business of developing, manufacturing, marketing importing, distributing, selling, leasing and/or otherwise providing, directly and indirectly, electronic video game hardware, software, and accessories for use with or on Nintendo's Wii gaming console and system (including the Wii Motion Plus) and for Nintendo's 3DS gaming console and system.

11.      Defendant Retro is a corporation organized and existing under the laws of Texas and maintains a principle place of business at 1835 Kramer Lane, Suite A100, Austin, Texas 78758-4289, and is a wholly owned subsidiary of Nintendo Company, Ltd.

12.      Retro is in the business of designing, developing, marketing, supporting, distributing, selling and/or otherwise providing, directly and indirectly, video game software for use with or on Nintendo platforms including Nintendo's Wii gaming console and system (including the Wii Motion Plus) and Nintendo's 3DS gaming console and system.

13.     Defendants Nintendo, Nintendo of America, and Retro are hereinafter collectively referred to as the "Nintendo Defendants."

**Retail Defendants**

14.     Defendant RAC is a corporation organized and existing under the laws of Delaware and maintains a principal place of business in this judicial district at 5501 Headquarters Drive, Plano, Texas 75024.

15.     RAC is in the business of retail and internet sales, licensing and rentals of videogame hardware, software, and accessories, including Nintendo's Wii gaming console and system (including the Wii Motion Plus), and Nintendo's 3DS gaming console and system, and games adapted to be used with Nintendo's Wii and 3DS gaming consoles and systems.

16.     Defendant GameStop is a corporation organized and existing under the laws of Delaware and maintains a principal place of business at 625 Westport Parkway, Grapevine, Texas 76051.

17.     GameStop is in the business of retail and internet sales and licensing of videogame hardware, software, and accessories, including for Nintendo's Wii gaming console and system (including the Wii Motion Plus) and Nintendo's 3DS gaming console and system, and games adapted to be used with Nintendo's Wii and 3DS gaming consoles and systems.

18.     RAC and GameStop are hereinafter collectively referred to as the "Retail Defendants."

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

20.     Defendants are subject to personal jurisdiction in the State of Texas because Defendants have committed acts of direct infringement, contributory infringement, and/or actively induced  infringement,  of one or more claims of the '607 Patent, of the '429 Patent, and the '297 Patent in this judicial district and division.

21.     Defendants make, use, sell, advertise, offer to sell, lease, offer to lease and/or import into the United States, directly and indirectly, for subsequent sale, lease or use Nintendo's Wii gaming console and system (including the Wii Motion Plus) and Nintendo's 3DS gaming console and system and associated videogame hardware, software, and/or accessories for use with or on the foregoing Nintendo systems within this judicial district. The parties to this action are properly joined under § 299 of the America Invents Act because the right to relief asserted against Defendants arises out of the same series of transactions or occurrences relating to the making, selling, leasing and using of the same accused videogame hardware, software and accessories.  Additionally, questions of fact common to all Defendants will arise in this action. Therefore, joinder is proper under 35 U.S.C. § 299.

22.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b), for at least the reasons that the majority of the Defendants have principal places of business in Texas, and that all Defendants have committed acts arising out of the same series of transactions within this judicial district giving rise to this action and conduct business, directly and indirectly, in this district, including sales, licensing, lease, use, and providing, directly and indirectly, services and/or support to their respective customers in this district of videogame hardware, software, and accessories, including for Nintendo's Wii gaming console and system (including the Wii Motion Plus) and Nintendo's 3DS gaming console and system.

## COUNT I

### Infringement of United States Patent No. 6,167,607

23.     The allegations contained in paragraphs 1-22 above are incorporated by reference as if fully set forth below.

24.     The '607 Patent, entitled "Vision Target Based Assembly," duly and lawfully issued on January 2, 2001.   A true and correct copy of the '607 Patent is attached hereto as Exhibit A.

25.     Prior to the filing of this action, the Nintendo Defendants received actual notice of their alleged infringement of the '607 Patent, and prior to the filing of this First Amended Complaint, the Retail Defendants received actual notice of their alleged infringement of the '607 Patent.

26.     The Nintendo Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems (including the Wii Motion Plus), Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems (including the Wii Motion Plus) that, individually or in combination, directly infringe one or more claims of the '607 Patent.

27.     The Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '607 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars,

Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, directly infringe one or more claims of the '607 Patent.  The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users.  The Nintendo Defendants have contributed to the infringement of the '607 Patent by engaging in such activities knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that directly infringes the '607 Patent, and that those products do not have substantial non-infringing uses.

28.     The Nintendo Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide electronic video game hardware, software, and accessories for the  Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe one or more claims of the '607 Patent.

29.     The Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '607 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, infringe one or more claims of the '607 Patent.  The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users.   The Nintendo Defendants have

contributed to the infringement of the '607 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that directly infringes the '607 Patent, and that those products do not have substantial non-infringing uses.

30.     The Retail Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems (including the Wii Motion Plus), Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems (including the Wii Motion Plus) that, individually or in combination, directly infringe one or more claims of the '607 Patent.

31.     The Retail Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '607 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, directly infringe one or more claims of the '607 Patent.  The Retail Defendants knew that their aforementioned products would induce direct infringement by consumer users.  The Retail Defendants have contributed to the infringement of the '607 Patent by engaging in such activities knowing that their aforementioned products are

especially made or especially adapted and to be used in a manner that directly infringes the '607 Patent, and that those products do not have substantial non-infringing uses.

32.    The Retail Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly,  electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe one or more claims of the '607 Patent.

33.    The Retail Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '607 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, infringe one or more claims of the '607 Patent. The Retail Defendants knew that their aforementioned products would induce infringement by consumer users.  The Retail Defendants have contributed to the infringement of the '607 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '607 Patent, and that those products  do not have substantial non-infringing uses.

34.    Defendants have been infringing and will continue infringing one or more claims of the '607 Patent through the aforesaid acts in violation of 35 U.S.C. §§ 271(a), (b), (c), (d), (f)

and/or (g), and will continue to do so unless enjoined by this Court.   Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, leasing, offering to lease, and importing, directly and indirectly, the hardware, software and accessories that infringe one or more claims of the '607 Patent.

35.     Plaintiff is entitled to a permanent injunction and to recover damages adequate to compensate for Defendants' infringement of the '607 Patent.

## COUNT II

### Infringement of United States Patent No. 7,843,429

36.     The allegations contained in paragraphs 1-37 above are incorporated by reference as if fully set forth below.

37.     The '429 Patent, entitled "Interactive Video Based Games Using Objects Sensed by TV Cameras," duly and lawfully issued on November 30, 2010.   A true and correct copy of the '429 Patent is attached hereto as Exhibit B.

38.     Prior to the filing of this action, the Defendants received actual notice of their alleged infringement of the '429 Patent.

39.     The Nintendo Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, and Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and

systems that, individually or in combination, directly infringe one or more claims of the '429 Patent.

40.     The Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '429 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, infringe one or more claims of the '429 Patent.  The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users.  The Nintendo Defendants have contributed to the direct infringement of the '429 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '429 Patent, and that those products  do not have substantial non-infringing uses.

41.     The Nintendo Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe one or more claims of the '429 Patent.

42.     The Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '429 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe one or more claims of the '429 Patent.   The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users.   The Nintendo Defendants have contributed to the direct infringement of the '429 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '429 Patent, and that those products do not have substantial non-infringing uses.

43.     The Retail Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, directly infringe one or more claims of the '429 Patent.

44.     The Retail Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '429 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars,

Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that directly infringe, individually or in combination, one or more claims of the '429 Patent.  The Retail Defendants knew that their aforementioned products would induce infringement by consumer users.  The Retail Defendants have contributed to the infringement of the '429 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '429 Patent, and that those products do not have substantial non-infringing uses.

45.     The Retail Defendants make, have made, use, have used, sell, offer to sell, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories that, individually or in combination, directly infringe one or more claims of the '429 Patent.

46.     The Retail Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '429 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe  one or more claims of the '429 Patent.  The Retail Defendants knew that their aforementioned products would induce infringement by consumer users.  The Retail Defendants have contributed to the

infringement of the '429 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '429 Patent, and that those products  do not have substantial non-infringing uses.

47.     Defendants have been infringing and will continue infringing one or more claims of the '429 Patent through the aforesaid acts in violation of 35 U.S.C. §§ 271(a), (b), (c), (d), (f) and/or (g), and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, leasing, offering to lease, and importing, directly and indirectly, the hardware, software and accessories that infringe one or more claims of the '429 Patent.

48.     Plaintiff is entitled to a permanent injunction and to recover damages adequate to compensate for Defendants' infringement of the '429 Patent.

## COUNT III

### Infringement of United States Patent No. 7,756,297

49.     The allegations contained in paragraphs 1-51 above are incorporated by reference as if fully set forth below.

50     The '297 Patent, entitled "Camera Based Sensing in Handheld, Mobile, Gaming, or Other Devices," duly and lawfully issued on July 13, 2010.    A true and correct copy of the '297 Patent is attached hereto as Exhibit C.

51.     Prior to the filing of this action, the Defendants received actual notice of their alleged infringement of the '297 Patent.

52.     The Nintendo Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, directly infringe one or more claims of the '297 Patent.

53.     The Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '297 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that directly infringe, individually or in combination, one or more claims of the '297 Patent.  The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users.  The Nintendo Defendants have contributed to the infringement of the '297 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '297 Patent, and that those products do not have substantial non-infringing uses.

54.     The Nintendo Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide,

directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe one or more claims of the '297 Patent.

55.     Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '297 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe one or more claims of the '297 Patent.  The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users.  The Nintendo Defendants have contributed to the direct infringement of the '297 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '297 Patent, and that those products do not have substantial non-infringing uses.

56.     The Retail Defendants make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii

video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, directly infringe one or more claims of the '297 Patent.

57.     The Retail Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '297 Patent by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that directly infringe, individually or in combination, one or more claims of the '297 Patent.  The Retail Defendants knew that their aforementioned products would induce direct infringement by consumer users.  The Retail Defendants have contributed to the direct infringement of the '297 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '297 Patent, and that those products do not have substantial non-infringing uses.

58.     The Retail Defendants make, have made, use, have used, sell, offer to sell, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories that, individually or in combination, directly infringe one or more claims of the '297 Patent.

59.     The Retail Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the '297 Patent by

consumer users of the electronic video game hardware, software, and accessories for the Nintendo 3DS video game consoles and systems, 3DS Augmented Reality Cards, 3DS video games (marketed under the "Nintendo" name), and/or other accessories associated with the 3DS video game consoles and systems that, individually or in combination, directly infringe  one or more claims of the '297 Patent.  The Retail Defendants knew that their aforementioned products would induce infringement by consumer users.  The Retail Defendants have contributed to the infringement of the '297 Patent by engaging in such activities, directly and indirectly, knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that infringes the '297 Patent, and that those products do not have substantial non-infringing uses.

60.     Defendants have been and continue infringing one or more claims of the '297 Patent in violation of 35 U.S.C. §§ 271(a), (b), (c), (d), (f) and/or (g), through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, leasing, offering to lease, and importing the hardware, software and accessories that infringe one or more claims of the '297 Patent.

61.     Plaintiff is entitled to a permanent injunction and to recover damages adequate to compensate for Defendants' infringement of the '297 Patent.

## COUNT IV

## Willful Patent Infringement

62.     Paragraphs 1 through 54 are incorporated by reference as if fully restated herein.

63.     The Nintendo Defendants have willfully infringed one or more of the Patents.

64.     The Nintendo Defendants had actual knowledge of the Patents and their alleged infringement thereof since about August, 2010.

65.     The Retail Defendants had actual knowledge of the '607 Patent as of at least the date of the filing of the Original Complaint and of the '297 Patent and of the '429 Patent prior to the date of filing of the Original Complaint.

66.     From about August, 2010 through at least about February, 2011, Plaintiff was in direct contact with Defendant Nintendo regarding alleged infringement of the Patents.

67.     There was, and still is, an objective likelihood that one or more of the Nintendo Defendants has infringed the Patents.

68.     The Nintendo Defendants knew or should have known of the objective risk of infringement of the Patents.

69.     Unless the Nintendo Defendants are enjoined by this Court, such acts of willful infringement by those defendants will continue.

70.     There was, and still is, an objective likelihood that one or more of the Retail Defendants has infringed the Patents.

71.     The Retail Defendants knew or should have known of the objective risk of infringement of the Patents.

72.     Unless the Retail Defendants are enjoined by this Court, such acts of willful infringement by those defendants will continue.

73.     Therefore, in addition to damages adequate to compensate for the infringement of the Patents, Plaintiff is entitled to additional damages for willful infringement including increased damages under 35 U.S.C. § 284, as well as attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, granting Plaintiff the

following relief:

A. That this Court adjudge and decree that the '607 Patent is valid and enforceable against Defendants;

B. That this Court adjudge and decree that the '429 Patent is valid and enforceable against Defendants;

C. That this Court adjudge and decree that the '297 Patent is valid and enforceable against Defendants;

D. That this Court adjudge and decree that Defendants have infringed and continue to infringe the '607 Patent;

E. That this Court adjudge and decree that Defendants have infringed and continue to infringe the '429 Patent;

F. That this Court adjudge and decree that Defendants have infringed and continue to infringe the '297 Patent;

G. That Plaintiff is entitled to a permanent injunction and to recover damages adequate to compensate for the infringement of the '607 Patent;

H. That Plaintiff is entitled to a permanent injunction and to recover damages adequate to compensate for the infringement of the '429 Patent;

I. That Plaintiff is entitled to a permanent injunction and to recover damages adequate to compensate for the infringement of the '297 Patent;

J. That this Court order an accounting of all damages sustained by Motion Games, LLC and as the result of the acts of infringement by each Defendant;

K. That this Court enter an award to Plaintiff of such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for said infringement, said damages to be no less than a reasonable royalty together with prejudgment interest and costs;

L. That this Court order an award to Plaintiff of up to three times the amount of compensatory damages because of Defendants' willful infringement, and any enhanced damages provided by 35 U.S.C. § 284;

M. That this Court render a finding that this case is "exceptional" and award to Plaintiff its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285; and

N. That this Court grant to Plaintiff such other, further, and different relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all matters to which they are entitled to trial by jury

pursuant to FED. R. CIV. P. 38.

Respectfully submitted,

/s/ *Gregory P. Love*
Gregory P. Love
Texas Bar No. 24013060
Darrell Dotson
Texas Bar No. 24002010
STEVENS LOVE
P. O. Box 3427
Longview, Texas 75606-3427
903.753.6760
903.753.6761 (Fax)
greg@stevenslove.com
darrell@stevenslove.com

Michael A. O'Shea (*pro hac vice* pending)
Leonard C. Suchyta
Rachael R. Yocum. (*pro hac vice* pending)
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue NW
Washington, DC 21500
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Joshua M. Kalb (*pro hac vice* pending)
**HUNTON & WILLIAMS LLP**
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308
Telephone: (404) 888-4000
Facsimile: (404) 888-4190

William A. Isaacson
D. Michael Underhill
Richard S. Meyer
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone:  202.237.2727
Fax:  202.237.6131
E-mail:  wisaacson@bsfllp.com
E-mail:  munderhill@bsfllp.com
E-mail:  rmeyer@bsfllp.com

ATTORNEYS FOR PLAINTIFF Motion Games,
LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 21st day of November, 2012

/s/ *Gregory P. Love*
Gregory P. Love