**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **MOTION GAMES, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:12cv878 |
| | § | |
| **NINTENDO CO., LTD.; NINTENDO OF AMERICA INC.; RETRO STUDIOS, INC.; RENT-A-CENTER, INC.; AND GAMESTOP CORP.,** | § § § § § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Retro Studios, Inc.'s ("Retro") Motion to Dismiss Pursuant to Rule 12(b)(3) and 12(b)(6) (Doc. No. 33) ("MOT."). Plaintiff Motion Games, LLC ("Plaintiff" or "Motion Games") filed an Opposition (Doc. No. 64) ("RESP.") and the matter is fully briefed. Doc. Nos. 67, & 71. On June 7, 2013, the Court granted Plaintiff's request for limited jurisdictional discovery on the issue of Retro's contacts with the Eastern District of Texas. Doc. No. 86. Plaintiff subsequently filed a Supplemental Brief in Opposition (Doc. No. 97) ("SUPP. BR.") that is also fully briefed (Doc. Nos. 98, 99 & 101). Having fully considered the parties' arguments and for the reasons set forth herein, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED-IN-PART** and **DENIED-IN-PART.**

**BACKGROUND**

Plaintiff Motion Games is a Texas corporation with its principal place of business in Austin, Texas. On November 11, 2012, Plaintiff filed the instant lawsuit, alleging direct and willful infringement of United States Patent No. 6,167,607 ("the '607 Patent"). COMPL. Plaintiff

amended its complaint on November 21, 2012, alleging infringement of the '607 Patent, along with United States Patent Nos. 7,843,429 ("the '429 Patent") and 7,756,297 ("the '297 Patent") (collectively, "the asserted patents"). AM. COMPL. The amended complaint ("FAC") additionally alleged contributory and induced infringement of the asserted patents. *Id.*

Defendant Retro is a Texas corporation with its principal place of business in Austin, Texas. Retro "designs and creates video game software for [co-defendant] Nintendo gaming systems…that are manufactured by [Nintendo Co., Ltd., ("NCL")] in Japan." MOT. at 3. On March 4, 2013, Retro filed the instant Motion to Dismiss asserting that the FAC fails to adequately allege proper venue or claims for either direct or indirect patent infringement. MOT. at 1. Specifically, Retro argues that venue is improper because it "does not reside in this District, has not committed the alleged acts of infringement in this District, and it does not have a regular and established place of business in this District." *Id.* Retro additionally argues that Plaintiff fails to allege that any product or system developed by Retro directly infringes the asserted patents. Finally, Retro argues that Plaintiff's indirect infringement allegations fail because Plaintiff merely includes Retro in general, conclusory allegations directed to the group of Defendants as a whole. Plaintiff counters that its FAC "went above and beyond the pleading requirements" and that venue is proper because Retro waived any challenge to personal jurisdiction and because Retro is incorporated in the state of Texas, Retro is subject to personal jurisdiction throughout the state. RESP. at 1.

## LEGAL STANDARD

*Venue*

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action brought in an improper venue. If the Court finds that venue is improper, it "shall dismiss, or if it

be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

In patent cases, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). With respect to corporate defendants (as opposed to individuals), "the 'acts of infringement plus' test is effectively surplusage." *Invensense, Inc. v. STMicroelectronics, Inc.*, Case No. 2:13cv405-JRG, 2014 WL 105627 at *2 (E.D. Tex. Jan. 10, 2014) (citing *VE Holding*, 917 F.2d at 1580 n.17.).

In a state with multiple judicial districts, such as Texas, a corporate defendant is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State [or] in the district within which it has the most significant contacts." 28 U.S.C. § 1391(d). Thus, "a plaintiff must demonstrate that the defendant has sufficient minimum contacts with the district where the suit was brought to show venue was proper." *Garnet Digital, LLC v. Apple, Inc.*, 893 F.Supp.2d 814, 815 (E.D. Tex. 2012).

A court may also exercise specific jurisdiction over a defendant when the defendant purposefully directed its activities at residents of the forum state, the claim arises out of or relates to the defendant's activities within the forum state, and the assertion of personal jurisdiction is reasonable and fair. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (internal citation omitted). A plaintiff bears the burden of proving that minimum contacts exist through

3

the first two requirements, while a defendant bears the burden of proving that the exercise of jurisdiction would be unreasonable, corresponding to the third requirement. *Garnet Digital*, 893 F.Supp.2d at 816 (citing *Elecs. for Imaging v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)).

*Insufficient Pleading*

Motions to dismiss for failure to state a claim are governed by regional circuit law. *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1355-56 (Fed.Cir. 2007)). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *McZeal,* 501 F.3d at 1356 (internal quotations omitted); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 243 (5th Cir. 2010). Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 545 (2007) (interpreting Rule 8); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684-685, 129 S. Ct. 1937, 1949-50, 1953 (2009) (applying *Twombly* generally to civil actions pleaded under Rule 8). "'[D]etailed factual allegations'" are not required. *Iqbal,* 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In the patent context, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357 (citing *Twombly*, 550 U.S. at 565 n.10). Further, the Federal Circuit has definitively held that whether a complaint adequately pleads direct infringement is to be measured by the specificity required by Form 18. *Bill of Lading*, 681 F.3d at 1334; *see also* FED. R. CIV. P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."); *Twombly*, 550 U.S. at 569 n.14 (acknowledging that altering the Federal Rules of Civil Procedure cannot be accomplished by judicial interpretation). Form 18 provides a sample complaint for patent infringement and does not require extensive factual pleading:

(Caption—See Form 1.)

1. (Statement of Jurisdiction--See Form 7.)

2. On *date*, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent.

3. The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

4. The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all *electric motors* it manufactures and sells and has given the defendant written notice of the infringement.

Therefore, the plaintiff demands:

(a) a preliminary and final injunction against the continuing infringement;
(b) an accounting for damages; and
(c) interest and costs.

(Date and sign—See Form 2.)

FED. R. CIV. P. Form 18 (2007); *see also Bill of Lading,* 681 F.3d at 1334 (describing the requirements of Form 18). Thus, to the extent that *Twombly* and its progeny conflict with Form 18 and establish different pleading requirements, "the Forms control." *Id.* at 1336-37.

Form 18, however, applies only to direct infringement claims and thus cannot measure the sufficiency of indirect infringement pleadings. *Id.* Therefore, claims for indirect infringement must be judged by the pleading standards articulated in *Twombly* and *Iqbal*. *Id.* ("[B]ecause Form 18 addresses only direct infringement, we must look to Supreme Court precedent for guidance regarding the pleading requirements for claims of indirect infringement"). Lastly, the Court determines whether the complaint states a plausible claim for relief by examining the complaint in context and relying on the Court's own judicial experience and common sense. *Iqbal*, 129 S. Ct. at 1950.

A claim for induced infringement under 35 U.S.C. § 271(b) requires proof (1) of an act of direct infringement by another, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). The intent element requires that the defendant "[know] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, --- U.S. ---, 131 S.Ct. 2060, 2068 (2011); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.''). In order to survive a motion to dismiss, the complaint must (1) adequately plead direct infringement by defendant's customers, (2) contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patents,

and (3) contain facts plausibly showing that defendant knew that the customer's acts constituted infringement. *See Bill of Lading,* 681 F.3d at 1339.

A plaintiff claiming contributory patent infringement under 35 U.S.C. § 271(c) must prove (1) an act of direct infringement, (2) that the defendant "knew that the combination for which its components were especially made was both patented and infringing," and (3) that the components have "no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamore Danek, Inc.,* 424 F.3d 1293, 1312 (Fed. Cir. 2005). A complaint properly pleads a claim of contributory infringement if it contains sufficient facts from which Court may conclude that the claim is plausible. *Bill of Lading*, 681 F.3d at 1337.

A claim for willful patent infringement requires proof that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). "Willfulness does not equate to fraud, and thus, the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b)." *Ferguson Beauregard/Logic Controls, Division of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003).

## DISCUSSION

**I.  Venue**

The Court recognizes that the parties' dispute whether personal jurisdiction controls venue. 28 U.S.C. § 1391(c), however, clearly establishes that for venue purposes, a corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction." Further, "[w]henever a state longarm statute applies, enabling the

plaintiff to secure personal jurisdiction of the corporate defendant regardless of where the defendant has been served with process, a district in that state now qualifies ipso facto as proper venue as against that defendant." 28 U.S.C.A. § 1391 (Commentary on 1988 and 1990 Revisions of Section 1391, Application to Defendant Corporation, David D. Siegel). Thus, the threshold question is whether Plaintiff can demonstrate Retro has sufficient minimum contacts with the Eastern District of Texas to establish proper venue. *See Garnet Digital*, 893 F.Supp.2d at 815.

Plaintiff's strongest argument for specific jurisdiction rests on the "stream of commerce" theory because it posits that Retro knowingly directs the accused software it develops into this District.[1] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980); *Nuance Commc'ns v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (personal jurisdiction is sufficient over a defendant who manufactures or develops asserted products, and acting in consort with a distributor, places material into the stream of commerce knowing that its likely destination for retail sale includes the forum); *see also Invensense*, 2014 WL 105627 at *3. Here, Retro designs and delivers video game software to Nintendo. SAC ¶ 12; Doc. No. 33-1, Ex. A ¶ 2. In turn, Nintendo markets, sells, and distributes games and gaming systems throughout the United States, including to retailers in this District. Doc. No. 97-4, Ex. C ("Kelbaugh Dep.") 59:20-60:2, 66:18-68:8. The games supplied to Nintendo are customized for each of the North American, Japanese, and European markets. Kelbaugh Dep. 58:14-16. *See Nuance*, 626 F.3d at 1232 (relying on comments by defendant's CEO regarding the company's desire to win the U.S. market to find purposeful direction at the forum); *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, Case No. 2:05cv185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) (finding jurisdiction over a drill bit manufacturer when it placed the drill bits into the

---

[1] Because the Court finds sufficient minimum contacts via stream of commerce to establish proper venue, the Court need not address the argument concerning Retro's recruitment of employees in this District.

stream of commerce with the expectation that it would be purchased by consumers as part of the RIGID brand R7000 drill). Further, Retro participates directly in the distribution channel by providing artwork for packaging of its games, discussing with Nintendo how the games will be sold to the consumer, attending marketing events with retailers, and promoting its games through media interviews and its Facebook page. SUPP. BR. at 6; Kelbaugh Dep. 46:15-24, 58:14-59:16, 30:17-32:17, 33:24-34:3, 61:12-14. Therefore, it appears that Retro works closely with Nintendo in ensuring the successful integration of their software into the final products sold to customers. In so doing, the Court is persuaded that Retro knew that the games it helped design would reach customers all over the world, including the Eastern District of Texas. *Id.;* Kelbaugh Dep. 59:20-60:2, 66:18-68:8; SAC ¶ 12; Doc. No. 33-1, Ex. A ¶ 2. Thus, the Court finds that Retro has purposefully directed its products into the stream of commerce with the expectation that they would be purchased in the Eastern District of Texas. *World-Wide Volkswagen*, 444 U.S. at 297. Accordingly, the Court finds that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400(b) and therefore **RECOMMENDS** that Retro's request that the Court dismiss this case for improper venue be **DENIED.**

## II. Insufficient Pleading

A portion of the SAC[2] is set out below as representative of the dispute:

> The Nintendo Defendants[3] make, have made, use, have used, sell, offer to sell, license, lease, offer to lease, import into the United States, distribute, and/or otherwise provide, directly and indirectly, electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems (including the Wii Motion Plus), Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems (including the Wii Motion Plus) that,

---

[2] The Court notes that the briefing applied to the FAC, filed on Nov. 21, 2012. A Second Amended Complaint (Doc. No. 107) ("SAC") was filed on Nov. 7, 2013 and appears to merely remove references to Nintendo's 3DS gaming console and system. The Court considers the SAC as the live complaint in this dispute.

[3] The "Nintendo Defendants" include Retro, Nintendo Co., Ltd., and Nintendo of America.

> individually or in combination, directly infringe one or more claims of the [asserted patent].
>
> The Nintendo Defendants have contributed to and/or induced, and continue to contribute to and/or induce, direct infringement of one or more claims of the [asserted patent] by consumer users of the electronic video game hardware, software, and accessories for the Nintendo Wii video game consoles and systems, Wii controllers and systems, Wii sensor bars, Wii video games (marketed under the "Nintendo" name), and/or other accessories associated with the Wii video game consoles (such as controller attachments for facilitating gameplay) and systems that, individually or in combination, directly infringe one or more claims of the [asserted patent]. The Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users. The Nintendo Defendants have contributed to the infringement of the [asserted patent] by engaging in such activities knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that directly infringes the [asserted patent], and that those products do not have substantial non-infringing uses.

SAC ¶¶ 26-27, 39-40, 52-53.

A.   **Direct Infringement Allegations**

The Federal Circuit has held that Form 18 controls pleading requirements which include: (1) an allegation of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by "making, selling, and using [the accused product] embodying the patent;" (4) a statement that the plaintiff has given notice of its infringement; and (5) a demand for damages. *In re Bill of Lading*, 681 F.3d at 1334. Retro challenges the requirement in (3) and argues that as a developer of video game software, it has been improperly grouped with the other Nintendo Defendants alleged to manufacture, market and/or sell the accused products. However, the SAC alleges more than just infringement by the accused products as a whole. The SAC alleges "infringing products, components, *software* methods, processes," etc. used in such systems. SAC ¶¶ 26, 39, 52. (emphasis added). Retro admits that it is a developer and distributor of the software for the asserted gaming systems. MOT. at 13-14. Thus, this argument is unavailing. Additionally, the SAC alleges that Retro "uses" the asserted

patents. SAC ¶¶ 2-3, 26-27, 39-40, 52-53. The Court therefore finds that Plaintiff has met the Form 18 pleading standard for direct infringement and **RECOMMENDS** that Defendant's request that the Court dismiss this case for failure to plead direct infringement be **DENIED.**

### B. Inducement Allegations

As noted above, because Form 18 does not expressly pertain to indirect infringement, the general principles of *Twombly* and *Iqbal* apply to indirect infringement claims. *Bill of Lading,* 681 F.3d at 1336-37 (internal citation omitted). Under 35 U.S.C. § 271(b), induced infringement requires a showing of: (1) direct infringement by another; and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC,* 420 F.3d at 1378. A party is liable for induced infringement if it knew or should have known that the induced acts constitute patent infringement. *See* 35 U.S.C. § 271 (b); *Global-Tech Appliances,* 131 S.Ct. at 2068; *Bill of Lading,* 681 F.3d at 1339. Thus, to survive Retro's Motion to Dismiss, Plaintiff's complaint must contain sufficient facts alleging a direct infringer and plausibly showing that Retro specifically intended a third party to commit acts that it knew constituted infringement. *See Bill of Lading*, 681 F.3d at 1339. However, this does not mean that Plaintiff "must prove itself at the pleading stage." *Id.*

Motion Games alleges that the collective "Nintendo Defendants knew that their aforementioned products would induce direct infringement by consumer users." SAC ¶¶ 27, 40, 53. The complaint, however, fails to allege any facts that establish a plausible inference that Retro had the specific intent to induce consumer users to infringe, and knowledge that those actions amounted to infringement. Further, there is no allegation that the consumer users are even customers of, or had any dealings with Retro. It is well-established that "naked assertions devoid of 'further factual enhancement'" are insufficient to state a claim. *See Iqbal,* 556 U.S.

662 at 678 (quoting *Twombly,* 550 U.S. at 555). Thus, Plaintiff's complaint as to its inducement allegations fails to provide Retro with adequate notice.

### C. Contributory Infringement Allegations

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)). Thus, to state a claim for contributory infringement, Plaintiff must, among other things "plead facts that allow an inference that the components… have no substantial non-infringing uses." *Id*. (citations omitted).

For the reasons stated above, the Court finds that Plaintiff's complaint sufficiently identifies a direct infringer, as well as an apparatus (software) for use in the accused products. However, the complaint fails to allege facts from which the Court can plausibly infer the materiality of the software or that it is especially adapted for an infringing use. The complaint is further devoid of any allegation from which the Court can plausibly infer that the software has no substantial non-infringing uses. Plaintiff merely asserts that "[t]he Nintendo Defendants have contributed to the infringement of the [asserted patent] by engaging in such activities knowing that their aforementioned products are especially made or especially adapted and to be used in a manner that directly infringes the [asserted patent], and that those products do not have substantial non-infringing uses." SAC ¶¶ 27, 40, 53. Accordingly, the Court finds that Plaintiff's allegations fail state a claim for contributory infringement.

### D. Willful Infringement Allegations

A plaintiff need only have a good faith basis for alleging willful infringement. *Seagate*, 497 F.3d at 1374. To succeed on a cause of action for willful infringement, a party must show an "objectively high likelihood that its actions constituted infringement" and that this "objectively-defined risk was … either known or so obvious that it should have been known to the accused infringer." *Id.* at 1371. Accordingly, at the pleading stage, a plaintiff alleging willful infringement should provide enough facts that, when taken as true, show objective recklessness of the infringement risk.

"To willfully infringe a patent, the patent must exist, and one must have knowledge of it." *Vasudevan Software, Inc. v. TIBCO Software Inc.,* Case No. 11-06638, 2012 WL 1831543, at *2 (N.D. Cal. May 18, 2012) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1986)). While Motion Games generally alleges that the Nintendo Defendants collectively had pre-suit knowledge of the asserted patents, Motion Games offers no factual support for this knowledge. *Could Farm Associates, L.P. v. Volkswagen Grp. of Am., Inc.*, No. 10-052, 2013 WL 3353858, at *2 (D.Del. July 2, 2013) (finding sufficient pleading of willful infringement where plaintiff included in the complaint a pre-suit letter to defendant with regard to their alleged infringing products). "The Federal Circuit has instructed that under ordinary circumstances, willfulness will largely depend on an infringer's pre-litigation conduct." *Realtime Data, LLC v. Morgan Stanley*, 721 F. Supp. 2d 538, 545 (E.D. Tex. 2010) (citing *Seagate*, 497 F.3d at 1371). "Therefore, 'when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement.'" *Id.* "In discussing the good faith basis for a willfulness claim, the Federal Circuit specifically requires that a patentee meet the requirements of Federal Rules 8(a) and 11(b) at the time the original complaint is filed." *Id.* Motion Games' present complaint fails to allege any facts showing pre-filing conduct by the alleged infringers.

With regard to willful infringement, Plaintiff makes only the following allegations: "The Nintendo Defendants have willfully infringed one or more of the Patents." SAC ¶ 63. Plaintiff's allegations fail to state any facts that could be taken as true to recite a relief worthy claim for willful infringement. *Iqbal*, 556 U.S. 662 at 678. As it stands, these allegations are devoid of any facts that create an inference of Retro's objective recklessness; the allegations only make the conclusory assertion that Retro had knowledge of the asserted patents and continued to infringe. Because there are no facts to support the claim that Retro actually had knowledge of the asserted patents or facts that create an inference of Retro's objective recklessness, Motion Games' allegation of willful infringement fails to provide adequate notice.

## CONCLUSION

For all the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss for Lack of Venue and Motion to Dismiss Direct Infringement claims be **DENIED**. Additionally, the Court **RECOMMENDS** Defendant's Motion to Dismiss Inducement Contributory and Willful Infringement Claims be **GRANTED.** The Court further **GRANTS** Motion Games leave to amend its complaint within fourteen (14) days of the date of this Order to comply with Rule 8 as described herein.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to


factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 7th day of March, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE