UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| MOTION GAMES, LLC, § | |
| Plaintiff, § | Cause No. 6:12-cv-878-LED-JDL |
| § | |
| v. § | **JURY TRIAL DEMANDED** |
| § | |
| NINTENDO CO., LTD, et al., § | |
| Defendants. § | |

## MEMORANDUM ORDER AND ORDER

Before the Court is Defendants'[1] Motion to Transfer (Doc. No. 34) ("MOTION") from the Eastern District of Texas ("EDTX") to the Western District of Washington ("WDWA"). Motion Games, LLC ("Motion Games") has responded (Doc. No. 65) ("RESPONSE"), Defendants have filed a reply (Doc. No. 66) ("REPLY"), and Motion Games filed a surreply (Doc. No. 70) ("SURREPLY"). Having considered the parties' written submissions, the Court **DENIES** Defendants' Motion to Transfer (Doc. No. 34). Additionally, in view of the Order Adopting (Doc. No. 136) the Report and Recommendation (Doc. No. 126) regarding Retro's Motion to Dismiss (Doc. No. 33), Defendants' and RAC's Motion to Stay Proceedings and For Expedited Briefing (Doc. No. 121) is **DENIED AS MOOT**.

## BACKGROUND

On November 16, 2012, Motion Games filed an action against NCL, NOA, Retro, GameStop, and RAC alleging infringement of U.S. Patent No. 6,167,607 (the "'607 Patent") ("COMPLAINT").[2] Motion Games is a Texas Limited Liability Company headquartered in

---

[1] The Defendants are Nintendo Co., Ltd. ("NCL"), Nintendo of America Inc. ("NOA"), Retro Studios, Inc. ("Retro"), and GameStop Corp. ("GameStop") (collectively "Defendants"). Rent-A-Center, Inc. ("RAC") is also a defendant in the above captioned action, but does not join the instant Motion.

[2] On November 21, 2012, Motion Games filed an Amended Complaint (Doc. No. 3) alleging NCL, NOA, Retro, GameStop and RAC infringe U.S. Patent Nos. 7,843,429, 7,756,297, as well as the originally asserted '607 Patent (collectively the "Patents-in-Suit"). On November 7, 2013, Motion Games filed a Second Amended Complaint (Doc. No. 107) asserting the same three patents as in the Amended Complaint.

Austin, in the Western District of Texas ("WDTX"). *See* MOTION at 1; COMPLAINT at ¶ 4. Defendant NCL is a Japanese corporation headquartered in Kyoto, Japan. MOTION at 1. NOA is a Washington corporation headquartered in Redmond in WDWA, with offices in Redwood City, California, in the Northern District of California ("NDCA"). *Id*. at 1, 3. Retro is a subsidiary of NCL, and is based in Austin, Texas, in WDTX. *Id*. at 1. GameStop, who joins this Motion, only provides that it has been "alleged to be headquartered in Grapevine, which is located in the Northern District of Texas" ("NDTX").[3] *Id*. at 3; COMPLAINT at ¶ 16. RAC, who does not join the instant Motion, is "alleged to be a Delaware corporation headquartered in Plano," in EDTX. MOTION at 3. Motion Games accuses Defendants and RAC of infringing the Patents-in-Suit with video game hardware, software, and accessories for the Nintendo Wii videogame consoles and systems and Nintendo 3DS consoles and systems. Complaint at ¶¶26-29.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d

---

[3] Apparently GameStop is not an active participant in this Motion, given that the Motion notes that "NOA is [] funding the defense of GameStop with respect to the accused products and has agreed to indemnify GameStop if liability were to be found here." MOTION at 12, n.5.

1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

### I. Threshold Issue

As an initial matter, the parties dispute whether this action could have originally been filed in WDWA. *See* RESPONSE at 2-4; REPLY at 1-2. In particular, Motion Games contends Defendants have not met their burden of showing that GameStop and RAC are subject to jurisdiction in WDWA. *Id.*

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371

F.3d at 203. In a patent infringement case, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28. U.S.C. § 1400(b).

Well-established authority makes clear that a transferee court must have jurisdiction over the defendants in the transferred complaint. *In re Genentech,* 566 F.3d 1338, 1346 (Fed.Cir.2009) (citing *Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)); *Chirife v. St. Jude Medical, Inc.,* 2009 WL 1684563, at *3–4 (E.D.Tex. June 16, 2009). Therefore, the defendant has the burden to present a prima facie case of both personal jurisdiction and venue in the transferee court. *Chirife,* 2009 WL 1684563, at *1 (internal citations omitted); *Balthasar Online, Inc. v. Network Solutions, LLC,* 654 F.Supp.2d 546, 549 (E.D.Tex.2009) ("Transfer of a suit involving multiple defendants is ordinarily proper 'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'") (quoting *Liaw Su Teng v. Skaarup Shipping Corp.,* 743 F.2d 1140, 1148 (5th Cir.1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana,* 821 F.2d 1147 (5th Cir.1987)). The "critical time" when making this threshold inquiry is the time when the lawsuit was filed. *Balthasar,* 654 F.Supp.2d at 549 (citing *Hoffman,* 363 U.S. at 343).

Defendants assert that "Motion Games could have brought this case in the [WDWA]." MOTION at 5. Specifically, Defendants cite 28 U.S.C. § 1400(b) for the proposition that this case could have been "brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In view of the complex corporate relationships between NCL, NOA, and Retro, and GameStop's headquarters in NDTX, Defendants attempt to bolster the alleged applicability of 28 U.S.C. § 1400(b) with 28 U.S.C. § 1391(c), suggesting that "for venue

purposes, a corporation is deemed to reside in any district in which it is subject to personal jurisdiction." MOTION at 5.

Defendants' personal jurisdiction argument with respect to WDWA is based primarily on NOA's headquarters in Redmond. *Id*. Additionally, Defendants plead that NCL has unspecified contacts in WDWA which are "at least the same contact with the proposed forum as it does with [EDTX]." *Id*. With respect to Retro, Defendants appear to suggest that NOA somehow controls Retro based on the allegation that Retro "submits it games to NOA for approval," that Retro's CEO "periodically travels to Washington," and that one of Retro's several vice presidents and directors has an office at NOA's headquarters in Redmond.[4] MOTION at 5, n.2. With respect to GameStop and RAC, Defendants' argument rest exclusively on the unsupported allegation that "each [has] numerous stores within [WDWA] and sell the accused products within that district." *Id*. at 5.

Motion Games responds that Defendants have failed to show that is case could have been brought in WDWA because Retro's, GameStop's, and RAC's contacts "with Washington are insufficient to trigger personal jurisdiction." RESPONSE at 3. Specifically, Motion Games alleges that "the retail stores in Washington that form the basis of [Defendants'] allegations of contacts with Washington for RAC and GameStop are apparently operated by entities that are different from the entities that are the named defendants in this lawsuit." *Id*. (citing Decl. of Joshua M. Kalb at ¶ 6). Defendants admit that "[p]ublically available documents show GameStop, Inc. and Rent-A-Center West, Inc., the entities identified by Motion Games as registered in Washington, are [merely] wholly-owned subsidiaries of their respective parent companies," and not the parent corporations named as defendants in this case. REPLY at 1.

---

[4] It is noteworthy that the State of Washington also includes the Eastern District of Washington, though presumably Defendants meant to allege that the CEO of Retro travels to the WDWA specifically.

Defendants counter that because "the subsidiaries undoubtedly were established for the purpose of managing their parent company's retail stores in [WDWA] (and elsewhere) – activities that the defendant retailers otherwise would have to undertake," this case could have been brought in WDWA. REPLY at 1. However, Defendants provide no evidence and cite no declarations to support their position. *See* REPLY at 1-2.

Defendants do not specifically point to contacts that would indicate NCL is subject to personal jurisdiction in WDWA. *See* MOTION at 1 (NCL merely develops the accused products in Kyoto, while the accused products are "marketed, distributed and sold in the United States by [NOA]. "); MOTION Ex. B, Decl. of Toshiro Hibino at ¶4 (Design and development of the accused systems "were primarily performed at Nintendo's headquarters in Kyoto, Japan."). Moreover, even if NCL is subject to jurisdiction in WDWA, it is not clear how GameStop and RAC are subject to personal jurisdiction in WDWA. Defendants merely speculate that Rent-A-Center West, Inc. and GameStop Inc. are equivalent to their respective parents for purposes of personal jurisdiction analysis, without any supporting evidence. *See* REPLY at 1 (offering only conclusory argument that Rent-A-Center West, Inc. and GameStop Inc. "undoubtedly were established for the purpose of managing their parent company's retail stores in the [WDWA]" without reference to any supporting evidence or facts).

Having failed to show that the GameStop and RAC would have been subject to jurisdiction in WDWA, Defendants have fallen short of showing a *prima facie* case that *all* Defendants were subject to jurisdiction in the transferee forum at the time of filing. *See NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 2010 WL 5068146, at *3 (E.D. Tex. Dec. 6, 2010); *Gemalto S.A. HTC Corp.*, 6:10-cv-561-LED-JDL, 2011 WL 5838212, at *3 (E.D. Tex. Nov. 18, 2011) (finding Defendants failed to show that all Defendants were subject to jurisdiction in transferee forum because evidence presented in declaration was inadequate). Accordingly, Defendants have failed

to satisfy the threshold inquiry under § 1404(a) analysis with respect to GameStop and RAC, and therefore the case as a whole. Moreover, even if Defendants satisfied the threshold inquiry, Defendants' Motion to Transfer would still fail, as detailed below.

## II. Private Factors

### a. Relative Ease of Access to Sources of Proof

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their location in relation to the transferee and transferor venues. *See, e.g.*, *id.* at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

According to the declarations Defendants provided with the instant Motion, "documents related to finance; the design, development and testing of" the accused products are in Kyoto, Japan, while "documents related to the "business activities of NOA" are in WDWA or NDCA. MOTION at 7 (citing Decl. of Toshiro Hibino at ¶ 5; MOTION at 7 (citing Decl. of Noah Lang at ¶ 7). Defendants' declarations do not suggest that any "documents related to [] the design, development and testing of" the accused products are located anywhere in the United States. *See* MOTION at 7; REPLY at 2-3. Moreover, Defendants fail to specifically identify any document or documents in WDWA.

Specifically, NCL contends that "most of the technical documents related to the [accused systems] are in Japan." MOTION at 7 (citing Decl. of Toshiro Hibino at ¶ 5 ("Documents related to the business activities of NCL are located in Kyoto, Japan. These include documents related to *finance; the design, development and testing of Nintendo products*, including such documents for the *Wii* console and Nintendo *3DS* system, Nintendo *controllers* and *games*, and Nintendo *accessories*; *contracts* and *agreements*; human resources; *marketing*; *advertising*; and the results of surveys, studies and evaluations.") (emphasis added)).[5] Defendants' declaration of Noah Lang also provides that "[m]ost *documents related to the business activities of NOA* are located in Redmond, Washington. These include documents related to finance, sales and forecasting for Nintendo products in North America, consumer services, design of manuals and products packaging for Nintendo products such as the Wii console and Nintendo 3DS systems, licensing, contracts and agreements, advertising, marketing, human resources, and results from surveys, studies and evaluations." Motion Ex. C, Decl. of Noah Lang at ¶ 7 (emphasis added)); *see* MOTION at 7.

Motion Games explains that Defendants have ignored the location of sources of proof related to RAC and GameStop,[6] who "have [relevant] evidence at their Texas headquarters." RESPONSE at 6. Additionally, Motion Games alleges that Retro, "who designs and develops software [for the accused systems,] will have technical sources of proof located within Texas." RESPONSE at 6. Motion Games also provides that it "will rely in part on evidence that is in its

---

[5] *See Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11-cv-201-LED-JDL, Doc. No. 110 at n.4 (E.D. Tex. Dec. 21, 2011) ("[N]otwithstanding certain reservations, the convenience of foreign witnesses and documents should be discounted."); *Wellogix Technology Licensing LLC v. Automatic Data Processing, Inc.*, No. 6:11-cv-401-LED-JDL, 2013 WL 1729606, at n.7 (E.D. Tex. Mar. 19, 2013) ("Because any documents and witnesses located abroad will have to travel 'a significant distance no matter where they testify,' the inconvenience of transporting such documents or the inconvenience of any foreign witnesses will be discounted."); *Cell and Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-cv-706-LED-JDL, 2013 WL 1855972, at n.2 (E.D. Tex. Apr. 29, 2013) (discounting the location of foreign documents); *see also In re Genentech, Inc.*, 566 F.3d at 1344 (discounting European witnesses in the convenience analysis when reviewing a denial of transfer from Texas to California).

[6] Despite joining this Motion, GameStop makes no effort to provide any evidence that all of its relevant documents are not located at its headquarters in the NDTX, as alleged by Motion Games.

Austin office and in the Ohio residence of Dr. Pryor, the owner and operator of Motion Games and the sole named inventor on each Asserted Patent." *Id*. at 7.

All documents related to the "the design, development and testing of" the accused products will need to be relocated from Kyoto to the jurisdiction presiding over this litigation, and are therefore discounted.  MOTION Ex. B, Decl. of Toshiro Hibino at ¶ 5; *see In re Genentech, Inc.*, 566 F.3d at 1344 (discounting European witnesses in the convenience analysis); *Eidos Display.*, No. 6:11-cv-201-LED-JDL, Doc. No. 110 at n.4 ("[T]he convenience of foreign witnesses and documents should be discounted.").  Additionally, even if the case is transferred to WDWA, where the majority of NOA's documents are located, at least some documents related to the "to the business activities of NOA" will still need to be relocated from NDCA.  MOTION Ex. C, Decl. of Noah Lang at ¶ 7; *see* MOTION at 7 (describing "some" documents in Redwood City, California). Moreover, the relevance of at least some of NOA's documents identified in WDWA or NDCA is unclear.  *See* Motion Ex. C, Decl. of Noah Lang at ¶ 7 (identifying documents with unclear and unexplained relevance, including: "packaging for Nintendo products . . . advertising, marketing, human resources, and results from surveys, studies and evaluations.").  No one defendant has all its sources of proof in WDWA, and Defendants have failed to rebut Motion Games allegations that at least some documents related to Motion Games, Retro and GameStop are in Texas, as well as Motion Games allegation that all of RAC's documents are in EDTX.  Accordingly, this factor slightly disfavors transfer to WDWA.

### b. Availability of Compulsory Process

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.  *See In re Volkswagen II*, 545 F.3d at 316.  This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute

subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

Defendants' Motion does not address this factor, however Motion Games contends it disfavors transfer because Defendants "cannot identify a single non-party witness who would be subject to compulsory process in [WDWA] but is not subject to compulsory process in the current venue." MOTION at 11, n.3 ("NOA and NCL are unaware . . . of any non-party witnesses who reside within the subpoena power of this Court or within the subpoena power of [WDWA]."); RESPONSE at 8.

In the absence of any unwilling third-party witnesses, this factor is neutral.

### c. Convenience of Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of the centrality of their testimony to the issues raised in a case. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary. . . . It [is] not necessary for the district court to evaluate the significance of the identified witnesses' *testimony*") (emphasis added).

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545

F.3d at 317; *In re TS Tech*, 551 F.3d 1315, 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *See id.* (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in the transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

Defendants specifically identify seven witnesses, three of whom are in Japan, three of whom are in WDWA, and one of whom is in NDCA. MOTION at 9-10. With respect to the Japanese witnesses, all of whom work for NCL, and the witness in NDCA, who works for NOA, Defendants argue they "could more easily work from NOA's headquarters while in Washington (than remotely in Tyler, Texas), thus greatly reducing their lost work time." MOTION at 10. In support of this proposition Defendants cite the declarations of Toshiro Hibino and Noah Lang.

Specifically Mr. Hibino provides that "NCL employees are able to work at the [NOA] office in Redmond, Washington, when traveling . . . [this] would cause a significantly *smaller* disruption to NCL's business than travel to Tyler, Texas to attend trial." MOTION Ex. B, Decl. of Toshiro Hibino at ¶ 12 (emphasis added). Mr. Lang's declaration alleges that for the single specifically identified witness in NDCA, travel time to Seattle, Washington would be less than it would be to Tyler, Texas, and the witness in NDCA could "work from NOA's Redmond office during parts to the trial resulting in significantly *less* disruption to NOA's business than if trial occurred in Texas." MOTION Ex. C, Decl. of Noah Lang at ¶ 17 (emphasis added). Where the declarations contend that the relative impacts would be "smaller" or "less," they give no details regarding how or why such disruptions would be relatively "smaller" or "less." Moreover, the use of such relative language indicates that some degree of disruption is inevitable, though Mr. Hibino and Mr. Lang do not provide any facts to judge the extent to which the inevitable disruption might be mitigated. Absent any evidence regarding how the specifically identified witnesses in Japan and NDCA could work from NOA's office in Redmond, Washington to minimize disruption, Defendants have offered only speculation. Moreover, the convenience of the NCL witnesses is discounted because they will have to travel a substantial distance for trial, regardless of where it is held. *See In re Genentech*, 566 F.3d at 1345 (Witnesses of a "German corporation that will be traveling a great distance no matter which venue the case is tried [would] be only slightly more inconvenienced by the case being tried in California than in Texas."). Finally, Defendants have offered nothing more than mere speculation that any of the specifically identified witnesses would actually be required to attend trial. MOTION at 9 ("NCL and NOA employees will *likely* be the principal witnesses . . . [t]he following *potential* witnesses have been identified to date") (emphasis added).

Additionally, Defendants point out that the attorney who prosecuted two of the three Patents-in-Suit does not "reside in" EDTX. MOTION at 10. However, nowhere do Defendants aver that it would be more convenient for the patent prosecuting attorney to attend trial in WDWA, or that he is unwilling to attend trial in EDTX. *Id*. at 10-11 (citing Decl. of Yarbrough at ¶ 22).

Motion Games argues that because "of the five Defendants, three are Texas corporations[,] this Court is undoubtedly more convenient than the proposed transferee venue." RESPONSE at 10. Though GameStop joins this motion, it reveals nothing about the location of its relevant witnesses, providing conclusory speculation that because of its alleged "peripheral involvement [it is] not *likely* to have any witnesses with relevant knowledge in this District." MOTION at 11. Defendants make the same argument regarding RAC. *Id*. However, given that Motion Games fails to specifically identify any witnesses and Defendants specifically identify three witnesses residing in WDWA, this factor favors transfer.

### d. Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*"). Further, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" *In re Vicor Corp.*, 493 Fed. Appx. 59, 61 (Fed. Cir. 2012) (quoting *In re Volkswagen III*, 566 F.3d at 1351).

Motion Games correctly points out that "Movants have identified nothing to support the final factor in the private factor analysis." RESPONSE at 11. Defendants appear to argue that this factor favors transfer because "Motion Games' core infringement claims are against NOA and

NCL[, while the claims against ] GameStop and Rent-A-Center are merely peripheral." MOTION at 12. However, nowhere do Defendants provide any support for their conclusory argument that GameStop and RAC[7] do not and/or have not infringed. *See* MOTION at 12-14. Moreover, Defendants' argument that "adjudication of the claims against NOA and NCL will dispose of the entire case" is reaching because while GameStop technically joins this Motion, RAC is not a party to it, such that it is entirely unknown whether or not "adjudication of the claims against NOA and NCL" would also dispose of the case against RAC. *Id.* at 12, n.5 ("NOA is also funding the defense of GameStop."). The Court fails to see how this argument amounts to a practical problem that favors transfer.

Accordingly, Defendants' argument is inapplicable to "other practical problems," and Defendants' argument fails at least because Defendants' have not supplied any evidence to support their allegations.

### III. Public Factors

#### a. Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a

---

[7] Defendants allege that "NOA does not sell or distribute the accused products to [RAC] and it appears, from [RAC]'s website that it is not currently selling any Nintendo products. MOTION at 13. Motion Games responds that "RAC sold the system on a rent-to-own basis, but apparently removed advertisement of the Nintendo Wii from its company website only after Motion Games filed this lawsuit – a fact that Nintendo relies on to attempt to down play the significance of Rent-A-Center." RESPONSE at 6 (citing Decl. of Joshua M. Kalb at ¶¶3-5).

venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Defendants argue that EDTX has "little to no local interest in this case," and that "given its at best peripheral role, the fact that [RAC] also has its headquarters in Plano does not establish any additional local interest in the case." MOTION at 14. Additionally, Defendants argue that "the Federal Circuit has recognized [WDWA's] 'high' local interest in adjudicating patent cases relating to Nintendo because of Nintendo's substantial presence in that district." Motion at 15 (citing *In re Nintendo*, 589 F.3d at 1198). Motion Games responds that unlike in *In re Nintendo*, "*four of the six parties* are Texas-based entities, and the *majority* of technical and non-technical sources of proof are to be found outside [WDWA]." MOTION at 14; *see* MOTION at 7 (citing Decl. of Toshiro Hibino at ¶ 5. However, RAC is the only defendant actually located in this district.

In view of NOA's connection to WDWA and RAC's connection to EDTX this factor is slightly favors transfer, given that neither Motion Games, GameStop, nor NCL are connected to WDWA or EDTX.

### b. Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis, though this factor is the most speculative, and cannot outweigh other factors. *In re Genentech*, 566 F.3d at 1347. Additionally, the Court has previously found that reliance on general civil case statistics provide the Court with little guidance with respect to the speed with which patent cases reach trial. *West Coast Trends, Inc. v Ogio Int'l Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *4 (E.D. Tex. Oct 27, 2011) ("As is common with this factor, the parties cite to incongruous statistics which prevents the Court from drawing meaningful conclusion as to court congestion.").

Here, Defendants argue that the this factor somewhat favors transfer because, based on general civil case statistics from 2011, the time to trial in EDTX is 3.2 months longer than in WDWA. MOTION at 14 (citing Decl. of Yarbrough at ¶¶30, 31 (referring to an attached exhibit "of the 2011 Judicial Caseload Profile for [] U.S. District Court[s]")). Motion Games responds that EDTX sees patent cases to trial more quickly than WDWA. *See* RESPONSE at 12 (citing a 2012 PriceWaterhouseCoopers study finding EDTX was "the sixth fastest court in the country for brining patent cases to trial while . . . in contrast, the [WDWA did] not even make the top fifteen patent venues.") However, Motion Games fails to specifically identify the actual difference between the time to trial for patent cases in EDTX and those in WDWA. Ultimately, this factor appears to be the most speculative, and this factor alone should not outweigh other factors. Accordingly, this factor is neutral.

### c. Familiarity of Forum with Governing Law

Defendants argue this factor is neutral, and Motion Games does not expressly disagree. MOTION at 15, n.6; RESPONSE at 12-14. Accordingly, this factor is neutral.

### d. Conflict of Laws

Defendants argue this factor is neutral, and Motion Games agrees. MOTION at 15, at n.6; RESPONSE at 14, n.6. Accordingly, this factor is neutral.

## CONCLUSION

Although litigation is always an inconvenience, the "clearly more convenient" standard addresses situations where the disparity in convenience is readily apparent. In the § 1404 analysis, it is not enough for Defendants to show that there is some convenience in litigating the case in a different forum. Rather, Defendants must show that convenience in the transferee forum clearly outweighs the convenience of the transferor venue.

Defendants have not shown that it is clearly more convenient for the parties and witnesses to transfer the instant case to WDWA.  Here, Defendants failed to satisfy the threshold inquiry.  Even if Defendants had satisfied the threshold inquiry, the convenience of witnesses favors transfer and local interest slightly favors transfer.  However, relative ease of access to sources of proof slightly disfavors transfer, and the remaining factors are neutral.  Accordingly, the Court **DENIES** Defendants' Motion to Transfer (Doc. No. 32), and in view of the Order Adopting the Report and Recommendation regarding Retro's Motion to Dismiss (Doc. No. 136), Defendants' and RAC's Motion to Stay Proceedings and For Expedited Briefing by Defendants (Doc. No. 121) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 28th day of March, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE