# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| MOTION GAMES, LLC<br><br>       Plaintiff,<br><br>v.<br><br>NINTENDO CO., LTD.; NINTENDO OF AMERICA, INC.; RETRO STUDIOS, INC.; RENT-A-CENTER, INC.; and GAMESTOP CORP.,<br><br>       Defendants. | Case No. 6:12-cv-878<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF MOTION GAMES' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY PROCEEDINGS AND FOR PROTECTIVE ORDER AND TO <u>REQUEST EXPEDITED BRIEFING</u>**

Plaintiff Motion Games, LLC ("Motion Games") submits this memorandum in opposition to Defendants' Emergency Motion to Stay Proceedings. [Dkt. No. 203.] This is Defendants' *fourth* motion seeking a stay of all or part of the proceedings herein. The Court denied Defendants' first motion [Dkt. No. 137], and the two other motions to stay—each brought over 18 months after this case was filed—remain pending. [Dkt. Nos. 176, 178.] This latest motion is a belated attempt to justify Defendants' unilaterally imposed stay in view of Motion Games' motion to compel production of Defendants' witnesses for Rule 30(b)(6) depositions. [Dkt. No. 202.]

## I. INTRODUCTION

Defendants' motion comes after a two month period in which they effectuated an informal, unilateral stay by misleading Motion Games' into believing they would produce witnesses for Rule 30(b)(6) depositions. [*See* Dkt. No. 202 at 3-6.] Rather than informing Motion Games of their intent to refuse to comply with *any* noticed depositions until after their second and third motions to stay were decided by the Court, Defendants delayed producing witnesses for months before finally filing this motion when they ran out of excuses.

Even ignoring the impropriety of these tactics, Defendants' motion should be denied because it is almost entirely premised on their subjective belief that their pending motions *will be granted*. But Defendants' belief and the possibility that the case *could* be stayed is not a legitimate basis for staying the case *before* the Court decides those motions. Indeed, if a defendant's belief that its motion will be granted was sufficient to justify a stay, the "No Excuses" provision of Local Rule CV-26(a) would be rendered meaningless. And, of course, Motion Games has already shown why each of those motions, filed more than 18 months after this case started, should be denied. Given Defendants' delay in bringing their pending motions and how far along this case is in the schedule—with claim construction completed months ago and opening expert reports due in less than 3 months—any stay at this point in the case will only prejudice

Motion Games and reward Defendants' dilatory behavior.

Defendants' remaining arguments for a temporary stay are essentially a rehash of the arguments presented in their other two pending motions. For all the reasons set out in Motion Games' response to Defendants' prior motions to stay, Defendants' arguments that a stay should issue based on the pending *inter partes* review ("IPR") should be rejected. [*See* Dkt. Nos. 182, 190.] In particular, Defendants' numerous delays (in both seeking an IPR and then in filing its second motion to stay this case), the advanced state of this litigation, and the resulting prejudice to Motion Games all weigh heavily against staying the case.

Defendants' motions to stay discovery against Rent-A-Center and GameStop (the "Retail Defendants") are likewise flawed. [*See* Dkt. Nos. 183, 192.] Defendants' arguments in their present motion again rest on the false premise that the Retail Defendants are "peripheral." They are not. Each of the Retail Defendants not only sell non-Nintendo products that are accused of infringement, but each also engages in conduct that creates liability for infringement of at least the asserted method claims of the patents-in-suit, *e.g.*, by demonstrating and/or permitting customers to use the accused Wii products. Therefore, Motion Games will likely need evidence from the Retail Defendants about in-store displays, sales to consumers, customer lists, and knowledge as to how those consumers use the accused products.

Finally, Defendants' concurrent motion for a protective order is merely secondary to their fourth motion to stay. Defendants even ***admit*** that Motion Games is entitled to the discovery served on the Nintendo Defendants; thus they present no separate argument on which a protective order should be granted. Therefore, for all the reasons Defendants' request for a stay should be denied, Defendants' request for a protective order should be denied as well. Defendants should be ordered to appear for depositions and to comply with their discovery obligations.

## II. STATEMENT OF FACTS

### A. Defendants Improperly Seek to Avoid Valid Rule 30(b)(6) Depositions.

As detailed in full in Motion Game's co-pending Emergency Motion to Compel, [Dkt. No. 202], on July 2, 2014, Motion Games served notices of deposition on all defendants in this case. [Dkt. No. 202-3.] The notices were for basic, custodial Rule 30(b)(6) depositions, expressly permitted under the Court's Order Regarding E-Discovery in Patent Cases. [Dkt. No. 82.] More than two full months later, after Motion Games *repeatedly* offered to work with Defendants on dates and locations, after Defendants' repeated assurances that they would provide witnesses, and after Motion Games agreed to modify topics to help Defendants identify the proper witnesses, Defendants formally refused to provide witnesses on *any* noticed topic (or provide any discovery at all for that matter) until this Court rules on the pending motion to stay. [Dkt. No. 202 at § II.] Defendants' actions appear to have been tailored to delay discovery unilaterally, pending the Court's ruling on Defendants' underlying motions to stay.

Motion Games is unquestionably entitled to discovery on the noticed Rule 30(b)(6) deposition topics, which are not controversial. Despite Defendants' representations to the contrary, Motion Games seeks information critical to focusing future discovery efforts and avoiding unnecessary substantive discovery. [Dkt. No. 202-7.] Numerous topics are highly relevant to determining deponents, email custodians, and the reasons for clear deficiencies in Defendants' document productions to date:

> 1. The location, storage, record-keeping, record maintenance, collection, search for, organization of, and production of Documents concerning or relating to the Accused Instrumentalities.
>
> 2. The three (3) Persons most knowledgeable about Topic 1.
>
> 3. The identity (name, address, present employer, telephone number, email address), role, and involvement with the Accused Instrumentalities of current and former employees of Defendant whose job responsibilities related to the design, research, development, marketing, sales, and/or distribution of the Accused

Instrumentalities.

4. Defendant's document retention and destruction policies, practices, and procedures during the last ten years.

* * * * *

7. Defendant's search methodology, electronic searches, production and organization of Documents relevant to the claims or defenses of any party in this lawsuit (including search words, terms, or phrases used), identity of records custodians whose records were searched, and restrictions implemented or encountered by Defendant as to the scope and method of the search.

8. Production of the categories of Documents described in Exhibit A to MOTION GAMES' October 22, 2013 letter.

* * * * *

13. The role and involvement with the Accused Instrumentalities of each corporate office, division, and manufacturing facility including the design, research, development, marketing, sales, and/or distribution of the Accused Instrumentalities or any portion thereof, and the management structure at each such office, division, or other facility.

14. Identity, role, and involvement with the Accused Instrumentalities of consultants used by you relating to the design, research, development, marketing, sales, and/or distribution of the Accused Instrumentalities or any portion thereof.

15. The time period during which the following activities took place: the design, research, development, marketing, sales, and distribution of the Accused Instrumentalities or any portion thereof.

16. The process used to date to identify (i) Defendant's likely e-mail custodians and (ii) Defendant's most significant e-mail custodians, as required by the Court's Order Regarding E-Discovery in Patent Cases. (Dkt. 82 ¶7.)

17. Identity, role, and involvement with the Accused Instrumentalities of individuals likely to have the non-privileged information in their e-mails related to any licensing, right to use, non-assertion, transfer, purchase, or other agreement concerning any patents, whether Defendant's or a third party's patent, that concern or relate to any of the Accused Instrumentalities or portions thereof (including any of the foregoing that Nintendo contends are technologically or economically comparable) whether or not an actual agreement was reached.

Defendants admit that Motion Games is entitled to at least some of this discovery. [Dkt. No. 203 at 2 ("Nintendo concedes that Motion Games is entitled to take such discovery").]

**B. Defendants Have Engaged in a Pattern of Delay.**

The Complaint in this case was filed on November 16, 2012. [Dkt. No. 1.] Discovery has been proceeding for many months and is set to close on March 1, 2015. Opening expert reports are due on December 14, 2014. [Dkt. No. 199.] Documents have been produced by both sides and Rule 30(b)(6) depositions have been noticed by Plaintiff since July 2, 2014. Interrogatories were served on all Defendants by Plaintiff on June 2, 2014. Claim construction issues were fully briefed in April 2014 and argued in May 2014. Trial is scheduled for October 13, 2015.

Yet through it all, Defendants have repeatedly tried to forestall litigation in this Court. Defendants have filed motions to dismiss, two separate transfer motions, and no fewer than four motions to stay (including the present motion). [Dkt. Nos. 33, 34, 121, 176, 178, 203.] One of the pending motions and this motion to stay are predicated on the concurrent *inter partes* review ("IPR") proceedings pending in the Patent Office. Even those proceedings, however, were delayed by Defendants. Defendant Nintendo of America ("NOA") did not file its Petitions seeking IPR until November 19, 2013, ***more than one year after this action was commenced***. Even after the IPRs were instituted by the PTO on May 19, 2014, Defendants further delayed until June 25, 2014 in filing their motion to stay. The net effect of Defendants' delay, both in seeking IPR and then in seeking a stay, is that final decisions from the Patent Office are unlikely to be issued for at least seven months, and possibly as long as thirteen months from now, which is ***after*** the scheduled trial date in this case. Moreover, any appeal of those Patent Office decisions would extend the delay by another year or more.

## III. ARGUMENT

"The party seeking a stay bears the burden of showing that such a course is appropriate." *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-00224, slip op. at 2 (E.D. Tex. Jan. 14, 2014) (Love, Mag.) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). To meet this burden, the movant must present "facts or arguments that persuade the Court to

5

deviate from its established policy [in favor of denying] motions to stay." *Portal Techs. LLC v. Yahoo! Inc.*, 2013 WL 7760960, at *1 (E.D. Tex. Jan. 3, 2013) (Gilstrap, J.). This Court and other courts have routinely denied opposed motions to stay litigation pending instituted *inter partes* and covered business method reviews. *See Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-00224-JDL, slip op. (E.D. Tex. Jan. 14, 2014) (Love, Mag.) [Dkt. No. 182-8]; *Lennon Image Techs., LLC v. Lumondi Inc.*, No. 2:13-cv-00238, slip op. (E.D. Tex. Jan. 6, 2014) (Gilstrap, J.) [Dkt. No. 182-8; *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068, slip op. (E.D. Tex. Nov. 8, 2013) (Payne, Mag.) [Dkt. No. 182-8]; s*ee also Walker Digital, LLC v. Google, Inc.*, No. 11-318-LPS, 2014 WL 2880474 (D. Del. June 24, 2014); *McRo, Inc. v. Bethesda Softworks LLC*, No. 12-1509-LPS-CJB, 2014 WL 1711028 (D. Del. May 1, 2014); *Nexans Inc. v. Belden Inc.,* No. 12-1491-SLR-SRF, 2014 WL 651913 (D. Del. Feb. 19, 2014); *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494 (S.D. Ohio Feb. 11, 2014); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028 (C.D. Cal. 2013).

In the Eastern District of Texas, the Local Rules do not permit a party to refuse to engage in discovery based on pending motions. Local Rule CV-26(a), entitled "No Excuses." ("a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venues."); *see ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 122 (E.D. Tex. 2009) (defendant was not excused from providing discovery where the court had not yet ruled on its motions to dismiss or transfer venue); *GHJ Holdings, LLC v. Plasticade Prod.*, Corp., No. 5:10-CV-220, slip op. at 3 (E.D. Tex. Sep. 7, 2011) (denying emergency motion to stay pending resolution of a motion). [attached hereto as Ex. 1.][1]

---

[1] References to "Ex." herein refer to the exhibits attached to the Deceleration of Patrick M. Lafferty filed herewith.

### A. An Emergency Stay Would Unduly Prejudice Motion Games.

Granting any of Defendants' belated motions, including the present "emergency" motion, would be highly prejudicial and present a clear tactical disadvantage to Motion Games for several reasons. Accordingly, this weighs strongly against granting a stay.

Expert reports are due in approximately three months. If the court were to grant the stay requested in the current motion, and eventually deny the stay of the entire case requested previously by Defendants, Motion Games would lose a significant amount of the relatively small remaining window for fact discovery. Cutting the already tight discovery period leading up to expert reports by any significant amount would unfairly prejudice Motion Games' opportunity to gather evidence supporting its positions. Compounding the prejudice is that Defendants have already wasted *two months* (and counting) of the discovery period by unilaterally refusing to provide discovery even they admit is appropriate. As a result, this factor weighs in favor of denying Defendants' emergency motion for a stay.

By contrast, granting the Defendants' motion would reward Defendants' pattern of delay. It was Defendants, not Motion Games, who chose (1) to file their IPR petitions at the last possible minute, (2) to delay requesting a stay based on the instituted IPRs, and (3) to refuse to provide custodial Rule 30(b)(6) witnesses for deposition and delay for over two months to move on an "emergency" basis to stay the case and seek a protective order. Correctly, "[c]ourts have expressed reluctance to grant a stay where the timing of the request for PTO review suggests a dilatory intent on the movant's part." *Nexans Inc. v. Belden Inc.,* No. 12-1491-SLR-SRF, 2014 WL 651913, at *3 (D. Del. Feb. 19, 2014). Further, "[a] delay in filing the motion to stay may also indicate that the movant sought to gain an improper tactical advantage." *Nexans*, 2014 WL 651913, at *3.

Here, NOA waited until *over a year* after this action was filed to petition the Patent Office for IPR. The PTAB issued its institution decisions on May 19, 2014. Even then, Defendants delayed *more than a month* after these decisions before filing their motion to stay based on the instituted IPRs. And before that, Defendants made every effort to have this case transferred before filing their IPR. Only when they realized that the case would not be transferred did they feel compelled to file the IPR petitions. Defendants' tactical pattern of delay (*e.g.* filing an IPR petition *on the last possible day*, filing two motions to transfer and four motions for stay) is part of Defendants' strategy to avoid litigating in this Court at all costs. The Court's power to stay should not be manipulated into providing a tactical advantage to Defendants. *See Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-00224, slip op. at 2 (E.D. Tex. Jan. 14, 2014) (Love, Mag.) (denying a stay requested *less* than one month after institution of IPRs which were requested *one year after* litigation began) [Dkt. No. 182-8]; *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1031 (C.D. Cal. 2013) (denying motion to stay litigation pending completion of instituted IPR where "Defendant did not file its *inter partes* review petitions until almost a year after being served with the complaint"). Accordingly, the stay should be denied.

### B. Defendants' Arguments in Favor of a Stay Ring Hollow.

Defendants ignore their own delay and summarily conclude that a stay is warranted because it "*could* result in the simplification of issues." [Dkt. No. 203 at 11 (emphasis added).] However, Defendants' own conditional wording reveals the speculative nature of its "simplification of issues" argument. *See Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068, slip op. at 3 (E.D. Tex. Nov. 8, 2013) (Payne, Mag.) [Dkt. No. 182-8] ("The speculative nature of possible simplification of issues and potential length of the IPR process and appeal weighs against a stay.").

Here, there is nothing complex to address. Motion Games seeks to conduct fundamental discovery (*e.g.* Rule 30(b)(6) depositions, both custodial and substantive) unless or until the Court issues an order staying the entire case. Not even Defendants contest that Motion Games is entitled to the discovery, so the only question to be resolved is will the discovery take place now, or later? That is the very decision pending before the Court in Defendants' third motion to stay. Granting Defendants' "emergency" motion to stay pending the outcome of the "non-emergency" motion to stay will not simplify anything.

### C. Defendants' "Emergency" Motion Comes Too Late.

Defendants' various motions to stay, including the recent "emergency" motion, come far too late given the advanced status of this case. The *Markman* hearing in this case was conducted on May 15, 2014, and has been briefed since early May. [Dkt. No. 161, 162, 171.] Summary judgment of indefiniteness was also briefed and heard during this time. [Dkt. No. 154, 166, 171.] This Court will issue its *Markman* order and ruling on summary judgment of indefiniteness in the coming months. Courts often deny stays under similar circumstances. *See Unifi*, slip op. at 7 (denying stay where "claim construction was already underway by the time [accused infringer] filed for the instant stay") [Dkt. No. 182-8]; *see also Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494, at *3 (S.D. Ohio Feb. 11, 2014) ("Courts regularly deny stay requests when, as here, the litigation has progressed significantly toward trial."); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1031-32 (C.D. Cal. 2013) ("While not much discovery has occurred, Defendant did not file its *inter partes* review petitions until almost a year after being served with the complaint, and during that time the Court spent substantial effort construing the claims. . . . Defendant could have filed its petitions and this motion before claim construction. This factor weighs against a stay.").

Because of Defendants' delay in filing their petitions for IPR discussed above, final decisions in the IPRs from the Patent Office likely will not issue for at least seven months, and possibly not until November 2015, *after* the scheduled trial date in this case. With the further likelihood that any decisions issued by the Patent Office will be appealed, a stay of the entire case would result in a delay measured in years. In *Unifi*, this Court denied an accused infringer's motion to stay litigation pending an instituted IPR where the litigation had been pending for over a year and a half. *See Unifi*, slip op. at 5. The present litigation has been pending for twenty two months, even longer than the 18 months in *Unifi*, and discovery as well as the claim construction process are well underway.

Worse still, the present motion to stay comes after Defendants spent two months stringing Motion Games along with the promise of producing Rule 30(b)(6) witnesses for deposition. In reality, it seems Defendants never planned to produce witnesses, and instead hoped that the Court would rule on the underlying motion to stay before they were forced to respond to Motion Games' discovery. The extensive progress made in the case to date, despite Defendants' efforts to delay, weighs against granting any stay, including the current request for a stay pending resolution of Defendants' previously filed motion for stay pending resolution of the IPR proceedings. *See Unifi*, slip op. at 7 (denying stay where the trial date had been set, discovery and claim construction were underway, and the litigation had been pending for over a year and a half); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068, slip op. (E.D. Tex. Nov. 8, 2013) (Payne, Mag.) ("The late stage of the proceeding and [accused infringer's] failure to move to stay the case earlier in the trial process weighs heavily against a stay."). [Dkt. No. 182-8.]

**D. Motion Games' Discovery Requests are Proper.**

**i. The Noticed Dates and Locations are Not Grounds for Objection.**

Defendants' repeatedly argue that the September 2 Rule 30(b)(6) deposition notices were

10

unreasonable because "their demanded times" were less than two weeks from when the notice was sent. [Dkt. 203 at 5, 11.] Defendants also irrelevantly argue that the locations for the depositions listed in the notices were improper for the witnesses. [Dkt. 203 at 5, 12.] The arguments are baseless in view of the record. Motion Games informed Defendants no less than *eight separate times* that it was willing to accommodate different dates and locations for the depositions that would work for Defendants (and remains so today). [*See* Dkt. Nos. 202-2 at p. 1-5; 202-5 at p. 1; 202-6 at p. 1, 3.]

Defendants also ignore the fact that the subject matter of the topics in the September 2 Rule 30(b)(6) notice [Dkt. No. 202-7] were first sent to Defendants on July 2—two months earlier. [Dkt. No. 202-3.] The September 2 notices were simply amended versions of these earlier notices that reflect an agreement reached during the August 12 meet and confer, which was requested by the Defendants to narrow the topics to assist them in "produc[ing] the appropriate witnesses." [Dkt. No. 202-6 at 3.] Defendants cannot claim to have been surprised by the topics in the September 2 Rule 30(b)(6) notice, and cannot explain why they are still unable to timely identify and provide witnesses. Thus, the timing and location set forth in the September 2 notices themselves offer no excuse for Defendants' refusal to comply with their discovery obligations.

### ii. The Noticed Topics are Not Objectionable.

Defendants also misrepresent Motion Games' discovery strategy as "aggress[ive]," "haras[ing]," and for the purposes of "gamesmanship." [Dkt. No. 203 at 1, 6, 8, 12.] Yet, at least the discovery that Nintendo seeks to avoid now is discovery that they admit Motion Games is entitled to receive. [*Id.* at 2.]

Far from "haras[ing]" or "untethered to any specific issues in this litigation," as shown above, the topics in the custodial Rule 30(b)(6) deposition notices are squarely directed to learning what documents Defendants have, the person(s) at each defendant that has them, how the

documents are stored, and what has been done to search for and collect them. This is the most basic and fundamental form of discovery, and is expressly permitted by the Court's Order Regarding E-Discovery in Patent Cases. [Dkt. No. 82.] Defendants have not, and cannot, point to any reason, other than the alleged need for a stay, why Motion Games is not entitled to the requested discovery.

Indeed, these custodial depositions are particularly important in this case given the apparent deficiencies in Defendants' productions. For example, the two Nintendo Defendants have produced a total of 37,579 pages *combined* – a pittance given the vast quantity of documents that must have been created as part of the design, development, marketing, and sale of one of the most successful gaming systems of all time. Moreover, in companies that employ thousands of individuals, the two Nintendo Defendants identified a total of seven email custodians *combined*.

The productions of GamesStop, Rent-A-Center, and Retro are even worse. GamesStop and Rent-A-Center have produced a grand total of approximately 2,372 pages of documents *combined*. In fact, Rent-a-Center has produced only 57 pages. Retro—a developer of Wii software—has produced 599 pages of documents and identified a total of five email custodians. There are clearly significant deficiencies in each of the Defendants' document productions. Defendants have no basis to argue that this discovery is unnecessary, and Motion Games has a right to explore the productions, especially before it engages in substantive depositions.

### iii. The Retail Defendants are Not Peripheral.

Defendants again argue that all discovery should be stayed as to the Retail Defendants because they are "peripheral" to this case. Defendants even refer to their inclusion in this case as "gamesmanship" by Motion Games. Contrary to the Defendants' baseless contentions, the Retail Defendants hold unique evidence regarding basic elements of infringement of at least certain

method claims of Motion Games' patents. That evidence, in turn, is important to the issue of indirect infringement of at least those same method claims by the Nintendo Defendants.

Motion Games seeks much more than mere damages discovery from the Retail Defendants. As noted above, the Retail Defendants not only sell non-Nintendo products that are accused of infringement, but each also engage in conduct such as demonstrating and/or encouraging use of the accused Wii products that creates liability for infringement of at least the asserted method claims of the Motion Games' patents independent of the Nintendo Defendants. Motion Games needs evidence from the Retail Defendants about in-store displays, sales to consumers, customer lists, and knowledge as to how those consumers use the accused products to establish not only the Retail Defendants' independent liability, but also Nintendo's liability on a number of method claims because Motion Games must prove direct infringement in order to establish Nintendo's liability for indirect infringement. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008). The Retail Defendants are not mere bystanders.

### E. Defendants Reliance on *Secure Access* is Misplaced.

Defendants' reliance on *Secure Axcess, LLC v. Nintendo of America, Inc.*, to support their motion for an emergency temporary stay is misplaced. Nos. 2:13-cv-32-JRG and 289-JRG (E.D. Tex. Feb 10, 2014). [Dkt. No. 203-1.] The primary reason a temporary stay was granted in that case was because it was still relatively early in that case: apparently long before claim construction briefing and the *Markman* hearing were scheduled to be completed. [*See* Ex. 2 (*Secure Axcess* Docket Sheet).] The court reasoned that "[a]s this case is in its early stages and ***claim construction briefing has just begun***, a short stay of limited duration will not unduly prejudice or present a clear tactical disadvantage to the Plaintiff ." [Dkt. No. 203-1 at p. 1-2 (emphasis added).] In contrast, claim construction briefing and the *Markman* hearing were completed months ago in this case, and opening expert reports are due in less than three months.

13

Thus, while the court in *Secure Axcess* found that there would be no harm to the plaintiff in delaying discovery, here a delay of even a few weeks (let alone months) will greatly prejudice Motion Games' ability to obtain the discovery it needs for its expert reports. Moreover, in *Secure Axcess*, the underlying motion to sever, stay, and transfer was the defendants' first attempt to transfer the case and was filed less than 5 months from when the complaint was filed. [Ex. 2.] In contrast, the parties have already fully briefed Defendants' first motion to transfer, which this Court denied, and have briefed two other motions revisiting these issues, which were not even filed by Defendants until 18 months after the complaint was filed.

### F.  Policy Considerations Weigh Against a Stay in this Case.

Finally, Defendants unilaterally imposed stay and present motion are attempts to encourage the Court to rule on its two pending motions.  Should the Court condone this behavior, other defendants will be encouraged to refuse to participate in discovery until the Court decides their pending motions, rendering the "No Excuses" provision of the Local Rules meaningless. *See, e.g.*, *GHJ Holdings*, No. 5:10-CV-220, slip op. at 3.  [attached as Exhibit 1.]  The Defendants here provide the perfect example as to the outcome such tactics would enable.  Emboldened by the *Secure Axcess* decision, Defendants have decided to stay this case unilaterally even before seeking, let alone being granted, the same relief granted under much different circumstances in *Secrue Axcess*.

### G.  Defendants' Eleventh Hour Request for a Protective Order Should Be Denied.

Defendants' offer nothing to support their request for a protective order beyond their belief that this matter should be stayed based on their pending motions.  For the same reasons those requests for a stay should be denied, so too should the request for a protective order.  Indeed, Defendants' request for a protective order is wholly divorced from the merits of the discovery

sought, and instead is yet another procedural mechanism to effectuate a stay as to all discovery pending the Court's decision on its motions.

Further, Defendants' request is too late. The request comes more than two months after the Rule 30(b)(6) notices were initially served, and after Defendants made repeated statements that witnesses would be made available. [Dkt. No. 202 at 3-7.] Defendants' delay forced Motion Games to waste time and resources attempting to address Defendants' numerous alleged issues. For example, Motion Games (1) re-noticed the depositions twice over the last two months; (2) repeatedly offered to accommodate Defendants' reasonable scheduling and location concerns; (3) engaged in a meet and confer with Defendants; and (4) amended the deposition topics to address the Defendants' concerns. Defendants could have raised any alleged issues with the Court sooner, but that would have defeated Defendants' underlying purpose: delay.

## IV. CONCLUSION

The Local Rules are clear: No Excuses. But excuses are all the Defendants offer this Court. For all the foregoing reasons, Motion Games respectfully requests that Defendants' Emergency Motion to Stay be denied, and that it be awarded its fees and costs for having to respond to this motion.

Dated: September 17, 2014         Respectfully submitted,

*/s/ Richard S. Meyer*_____
Gregory P. Love
Texas Bar No. 24013060
**STEVENS LOVE, PLLC**
P. O. Box 3427
Longview, Texas 75606-3427
Telephone: (903) 753-6760
Facsimile: (903) 753-6761
greg@stevenslove.com

Michael A. O'Shea (*pro hac vice*)

15

Leonard C. Suchyta
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue NW
Washington, DC 21500
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Joshua M. Kalb
**HUNTON & WILLIAMS LLP**
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308
Telephone: (404) 888-4000
Facsimile: (404) 888-4190

D. Michael Underhill
Richard S. Meyer
Patrick M. Lafferty
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) -237-2727
Facsimile: (202) 237-6131
E-mail: wisaacson@bsfllp.com
E-mail: munderhill@bsfllp.com
E-mail: rmeyer@bsfllp.com

*ATTORNEYS FOR PLAINTIFF*
   Motion Games, LLC

## CERTIFICATE OF SERVICE

      The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 17th day of September, 2014. Any other counsel of record will be served via first class mail.

                                                */s/ Richard S. Meyer*
                                                Richard S. Meyer