# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| MOTION GAMES, LLC<br>        Plaintiff,<br>v.<br>NINTENDO CO., LTD; NINTENDO OF AMERICA INC.; RETRO STUDIOS, INC.; RENT-A-CENTER, INC.; and GAMESTOP CORP.,<br>        Defendants. | Case No. 6:12-cv-878-JDL<br>JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO EMERGENCY MOTION OF MOTION GAMES TO COMPEL DEFENDANTS NINTENDO OF AMERICA, INC., RETRO STUDIOS, INC., RENT-A-CENTER, INC., AND GAMESTOP CORP. TO ATTEND DEPOSITIONS**

There is no basis for Motion Games' motion to compel. Defendants[1] have cooperated reasonably with Motion Games regarding their recent Rule 30(b)(6) deposition requests, engaged in a lengthy conference with Motion Games to discuss reasonable objections and to attempt to resolve disputes regarding the scope of topics in the notices, and otherwise worked to provide reasonable dates for the scheduling of the depositions. In presenting its motion to compel, Motion Games claims that during the two months since *first* serving deposition notices in this case (for other than non-jurisdictional discovery) - over a year since discovery opened - their pursuit of discovery was entirely diligent and reasonable and was improperly thwarted by extensive delay and bait-and-switch tactics by Defendants. That claim is a complete distortion of the record.

Motion Games' belated notices were non-substantive, and related only to custodial topics such as email and data backup and restoration policies and employee computer use policies. Although none of these topics concern discovery directed to the merits of this case, Defendants responded appropriately to these requests and took entirely reasonable positions while the parties

---

[1] "Defendants" refers to, collectively, Defendants Nintendo of America Inc. ("NOA"), Nintendo Co., Ltd. ("NCL") (collectively, "Nintendo"), Retro Studios, Inc. ("Retro Studios"), Rent-A-Center, Inc. ("Rent-A-Center") and GameStop Corp. ("GameStop"). Rent-A-Center and GameStop are referred to as the "Retailer Defendants".

sought to schedule depositions. Indeed, any delay in the process was attributable to Motion Games itself. Motion Games' claims to the contrary are demonstrably false.

For example, on August 8, 2014, counsel for NOA indicated that it was NOA's objective to provide a witness for NOA to testify on August 27 or September 3 or 4. Following a lengthy meet and confer on August 12, during which Motion Games admitted to many deficiencies in its notices and indicated its intent to revise and streamline them, Motion Games simply let the NOA dates go by. Further, despite the issues addressed at the meet and confer, Motion Games let three weeks go by without providing amended notices. The second amended notices Motion Games finally served on September 2 contained minor revisions to a few topics, but did not resolve most of the Defendants' stated objections and did not reflect three weeks' worth of work. These second amended notices again unilaterally set a deposition location (Austin, Texas) unacceptable to the Retailer Defendants and unilaterally set objectionable deposition dates (September 11 and 12) for the Retailer Defendants and Retro Studios less than two weeks from date the notices were served.

It was only in response to Motion Games' failure to address Defendants' objections and the pursuit of this burdensome and fruitless discovery in the form of the second amended notices on the peripheral Retailer Defendants, that Defendants sought a temporary stay of discovery to allow the Court time to rule on the outstanding motions to stay (Dkt. 176) and to sever and stay (Dkt. 178). Contrary to Motion Games' position, Defendants had not all along planned to refuse all discovery in this case pending the outcome of the earlier filed motions to stay and sever and transfer. Rather, Defendants worked diligently to come to a reasonable agreement on Motion Games' notices.

Motion Games' claim that Defendants have unreasonably refused ***any*** deposition discovery in this case is belied by the actual record, and its claim to be prejudiced by ***Defendants'*** delay is belied by Motion Games' own dilatory tactics. *First*, Motion Games did not even *begin* to

seek these depositions until *well over a year* after the initial status conference, and only *after* Defendants filed their motion to stay the case pending Inter Partes Review (IPR) (Dkt. 176), in a transparent attempt to undermine Defendants' motion to stay. *Second*, although Motion Games complains of its inability to obtain discovery in a period of two months, Motion Games itself waited for a period of three weeks (from August 12 to September 2, 2014) to propound amended depositions notices in light of the parties' meet and confer. This three week delay was attributable solely to Motion Games. Moreover, in its amended notices, Motion Games completely failed to address the merits of Defendants' objections. *Third*, any claim of prejudice is belied by the fact that Motion Games is seeking to compel ***only non-substantive depositions*** of four of the Defendants (NOA, Retro Studios and the Retailer Defendants), and to date, Motion Games has not pursued any substantive depositions of these defendants. On September 3, 2014, Motion Games propounded its first and only deposition notice covering substantive topics – on NCL. Defendants have proposed a date for the deposition to take place in early November at the consulate in Osaka, Japan.

While Motion Games repeatedly claims prejudice, it tellingly fails to explain exactly ***how*** it would be prejudiced by a delay in obtaining information regarding document retention policies, internet usage and the like. That information has nothing to do with the merits of this case, nor will it assist Motion Games in any manner in meeting the upcoming expert report deadlines, which are still three months away.[2]

Defendants have raised bona fide objections to the noticed topics, locations and dates, and attempted to work with Motion Games over the past two months despite the pendency of Defendants' motions to stay. These attempts to work with Motion Games demonstrate that

---

[2] As discussed below, Motion Games' claim of prejudice in light of this event is belied – again – by its own behavior. Motion Games waited until just over *two months* before the then pending expert disclosure date to initially serve these non-substantive deposition notices.

Defendants have not violated the "No Excuses" rule of Local Rule CV-26(a). In light of Motion Games latest objectionable September 2 second amended deposition notices and other non-substantive discovery requests unrelated to the merits of the case -- primarily focused on the peripheral Retailer Defendants -- Defendants have simply requested that discovery be stayed until the Court rules on the pending motions to stay and sever and transfer.

Finally, an award of Motion Games' attorneys' fees and costs request is not warranted because Defendants have from the outset made plain their objections and have been addressing them in a timely and appropriate fashion with Motion Games. The parties have a legitimate dispute about the scope, location, and timing of the requested depositions and whether discovery should be stayed pending the Court's ruling on the transfer and IPR stay motions. Fees or sanctions of any kind are entirely unwarranted in light of the Defendants' legitimate objections and the good faith dispute which exists.

## I. BACKGROUND

Nearly two years ago, on November 16, 2012, Motion Games filed this action against the Defendants alleging that certain aspects of Nintendo's Wii gaming system infringe Motion Games' patents. (Dkt. 1.) Discovery was available to Motion Games since the May 22, 2013 initial status conference. (S*ee* Dkt. 76.) By November 2013, Defendants had substantially completed document production.[3] On May 15, 2014, the Court held a *Markman* hearing. (S*ee* Dkt. 171.) At no point in the year leading up to the *Markman* hearing did Motion Games seek to take a single deposition directed to the merits of this case.

On June 25, 2014, Defendants filed their Motion to Stay Pending IPR. (Dkt. 176.) Soon thereafter, on July 3, 2014, in light of new case law issued in late June 2014 (the Federal Circuit's

---

[3] Defendants have continued to supplement document production over the past ten months. Retro Studios' document production was provided later, shortly after Retro Studios' motion to dismiss (Dkt. 33) was denied (Dkt. 137), per the Discovery Order in this case.

decision in *In re Nintendo of America, Inc.,* 756 F.3d 1363 (Fed. Cir. 2014) ("*Nintendo III*") and Judge Davis' order in another Nintendo lawsuit, *UltimatePointer L.L.C. v. Nintendo Co., Ltd., et al.*, Nos. 11-cv-496 and 11-cv-571, (E.D. Tex. June 17, 2014) (Davis, J.), Docket No. 448 ("*UltimatePointer* Order")), Defendants filed their Motion to Sever and Stay. (Dkt. 178.)

**Defendants' Motion to Stay Prompts Motion Games to Serve its First Deposition Notices on July 2, 2014**. Almost immediately after Defendants filed their Motion to Stay Pending IPR, and apparently in response thereto, on July 2, 2014, Plaintiff served its very first notices of deposition in this case on each of the defendants,[4] only slightly more than two months before the September 15, 2014 deadline for plaintiff's expert disclosures then in effect. (S*ee* Dkt. 11.) Motion Games noticed *all* depositions to be held in Dallas, Texas, less than two weeks after the notices were served. (S*ee* Stulce Ex. 2, Dkt. 202-3.)[5]

The notices – identical for each of the five defendants, notwithstanding that two are retailers, one a designer of games, and the other two responsible for the design and distribution of the Wii – included 26 exceptionally broad topics that were untethered to any specific issues in this litigation. *See id*. Many of the topics appeared to be generic requests, and many were so irrelevant and confusingly worded that they appeared to have been cut and pasted from some other lawsuit altogether. For example, the original notices requested a wide range of irrelevant information going back *ten* years:

- "Defendant's email and data backup and restoration policies, practices, procedures, and schedules (including media and software used and storage locations) during the last ten years." (Stulce Ex. 2, Dkt. 202-3, No. 5.)

- "Defendant's employee computer use policies, practices, and procedures and the documents evidencing same during the last ten years." (*Id. at* No. 9.)

---

[4] Motion Games took two jurisdictional depositions in July 2013 related to Retro Studios' motion to dismiss.
[5] References to "Stulce Ex." herein refers to the exhibits attached to the Declaration of Andrew A. Stulce in Support of the Emergency Motion of Motion Games. (Dkt. 202-1.)

- "Defendant's computer- and paper-based file-naming and file-saving conventions and protocols during the last ten years." (*Id.* at No. 10.)

- "Identity, purpose and interconnectivity of Defendant's Internet, extranet, and intranet sites." (*Id.* at No. 14.)

- "Defendant's software and hardware upgrade and re-assignment practices, policies, and procedures during the last ten years." (*Id.* at No. 16.)

In a cover e-mail accompanying the July 2 notices, Motion Games asked Defendants to "[p]lease coordinate with [counsel for Motion Games] if the dates in the Deposition Notices pose significant issues." (*See* Stulce Ex. 1, Dkt. 202-2).

**Defendants Promptly Respond to, and Engage With, Motion Games on the Deposition Notices**. Despite the pending motions to stay and sever and stay, as outlined below, Defendants engaged with Motion Games over the next two months in prompt communications, including a substantial meet and confer session, to discuss the deposition topics and scheduling raised by these notices. Also during this period, Motion Games amended its deposition notices two times, each time prompting a timely and appropriate response from Defendants. In other words, the parties were engaged in setting up discovery notwithstanding the pending motions, as required under the "No Excuses" rule of Local Rule CV-26(a).

Specifically, in response to Motion Games July 2 notices (served on the eve of the holiday weekend), on July 10, counsel for Defendants indicated that "defendants are not able to appear for deposition on the dates noticed in the depositions" but that "[w]e are working with the defendants to determine workable dates and locations." (See Stulce Ex. 1, Dkt. 202-2). Despite this response, that same day (Thursday, July 10), counsel for Plaintiff asked if counsel for Defendants had time for a call the next day to discuss dates and locations. *Id*. Counsel for Defendants indicated she was not available and in any event that such a call was "premature at this point as we are still investigating dates and considering the numerous topics" in Motion Games' notices and indicated that Defendants counsel would let Plaintiff's counsel know once they had the information. *Id*.

The following Monday, July 14, counsel for Motion Games insisted that because of unspecified "scheduling constraints" the depositions "happen as soon as possible" and again asked for Defendants' availability. *Id*. The next day, July 15, counsel for Defendants responded that Defendants were reviewing the 26 topics, replete with objectionable requests, contained in each of the five separate notices unilaterally scheduling times less than two weeks later and were preparing responses to them; counsel then suggested a meet and confer after the responses were filed. *Id*. Counsel for Defendants also indicated that they were not aware of any "scheduling constraints" that required that the depositions "happen as soon as possible." And Motion Games offered no response or insight into any "scheduling restraints" from their end. *Id*.

**Motion Games' Serves Amended Deposition Notices on July 30, 2014**. On July 30, 2014, after two weeks of silence on the issue of the deposition notices, Motion Games served amended 30(b)(6) notices which changed the locations of *all* depositions – even for the three Texas-based defendants – to Seattle, Washington, where NOA is located, but the notices were otherwise substantively the same as the initial notices and included the very same objectionable content. (*See* Stulce Ex. 3, Dkt. 202-4). The amended notices unilaterally reset the deposition dates to August 12 and 13. Counsel for Motion Games indicated that if Defendants "are unable to agree to the noticed dates, please let us know your availability for a meet and confer on this issue over the next couple of days." (*See* Stulce Ex. 1, Dkt. 202-2). The next day, July 31, counsel for Defendants indicated that the Defendants were not available for depositions on the August 12 and 13 dates Motion Games had noticed, again less than two weeks in advance. *Id*. Counsel for Defendants reiterated their position that they were "not aware of any pressing urgency for these depositions, which address non-substantive topics related to document collection and retention," but indicated that Defendants intended to serve objections to the topics set forth in the notices the next week. (*See* Stulce Ex. 1, Dkt. 202-2).

**Defendants Promptly Engage With Motion Games and Offer Dates for a NOA Deposition**. On August 7, 2014, merely a week after Motion Games propounded amended deposition notices, Defendants NCL, NOA, and Retro Studios served their objections to the amended notices. *See* Exhibits A, B and C hereto. The next day, Friday, August 8, counsel for Motion Games indicated that despite Defendants' objections and July 31 correspondence indicating that Defendants were not available for deposition on August 12 and 13, Motion Games had not agreed to release the noticed deposition dates and demanded that Defendants provide dates. (*See* Stulce Ex. 4, Dkt. 202-5). That same day, counsel for Defendants reiterated that they had informed Motion Games on July 31, the day after receiving the deposition notices, that Defendants were not available for deposition on the noticed August 12 and 13 dates. Counsel for Defendants also reiterated that Defendants had "substantial objections to the bulk of the 27 non-substantive topics contained in the notices" and proposed alternate locations that Motion Games failed to address. Counsel nonetheless indicated that their objective was to provide a witness for NOA on August 27, or September 3 or 4, in Seattle, and proposed a meet and confer on Defendants' objections for early the next week on Tuesday, August 12. (*See* Stulce Ex. 4, Dkt. 202-5).

**The Parties Engage in a Meet and Confer on August 12, 2014.** At the August 12, 2014 meet and confer on the 30(b)(6) topics, counsel for Defendants addressed their objections and issues with the notices issued to NCL, NOA and Retro Studios (which were identical to the notices issued to the Retailer Defendants, GameStop and Rent-A-Center). On the call, Motion Games' counsel candidly acknowledged that many of the deposition topics were overbroad and confusing as written, and agreed to revise many of the topics, as well as withdraw others.

**Motion Games Fails to Pursue Offered Deposition Dates for NOA**. After the meet and confer, Motion Games made no immediate effort to revise its deposition topics or further effort to

schedule the deposition of the NOA witness. Instead, *three weeks* passed without *any* response by Motion Games to the issues discussed at the meet and confer.

**Motion Games Takes Three Weeks to Serve Its Second Amended Notices on September 2, 2014.** After a three week delay – from the August 12, 2014 meet and confer, to late in the evening on September 2, 2014 – Motion Games served its second amended[6] 30(b)(6) deposition notices on NOA, Retro Studios, Rent-A-Center, and GameStop (*see* Stulce Ex. 6, Dkt. 202-7). It is these September 2 notices that are the basis of Motion Games' motion to compel.[7] Though Motion Games indicated during the parties' meet and confer on the topics in its first amended 30(b)(6) notice (*see* Stulce Ex. 3, Dkt. 202-4) that it would clarify and streamline the topics, its second amended notices contain *21 topics* on non-substantive issues.

Motion Games again unilaterally noticed the depositions of the Retailer Defendants and Retro Studios to occur less than two weeks later – on September 11 (Retro Studios) and 12 (GameStop and Rent-A-Center) – and noticed all three to occur in Austin (where Motion Games' counsel has an office), though GameStop is headquartered in Grapevine and Rent-A-Center is headquartered in Plano.[8]

In the cover e-mail accompanying the notices, counsel for Motion Games indicated that "we remain willing to work with you within reason to accommodate your requests for dates and locations for these depositions" and "[i]f the dates and/or locations stated in the notices are not possible, please send us suggested dates and locations as soon as possible." (*See* Stulce Ex. 5, Dkt.

---

[6] Motion Games mistakenly titled the notices served on September 2, 2014 (*see* Ex. 6, Dkt. 202-7) as "Amended First 30(b)(6)" notices, although these are, in fact, the second amended notices.

[7] Plaintiff also served Motion Games' first requests for email production on Defendants Retro Studios, GameStop, Rent-A-Center on September 3, 2014, and on NOA on September 4, 2014. (S*ee* Ex. 7 to Dkt. 203.) These requests for email discovery are the first such requests it has made in this litigation.

[8]It is well settled that '(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this case, the corporation is the defendant." *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651-52 (5th Cir. 1979) (internal citations omitted). Though Motion Games has indicated that it would consider other locations for the Retailer depositions, notwithstanding this clear law, Motion Games has noticed the depositions of the Retailer Defendants for Austin, Texas. This is contrary to Motion Games' arguments in opposition to the motion to transfer, where it asserted that this venue was more convenient for the Retailer Defendants because those companies are based in or near the Eastern District of Texas. (Dkt. 65 at 7-8, 11-12.)

202-6). On Tuesday, September 3, 2014, the morning after receiving this e-mail and the second amended notices, counsel for Defendants indicated that they were reviewing the notices and looking into scheduling and would get back to Motion Games. (*See* Stulce Ex. 5, Dkt. 202-6).[9]

**Motion Games Insists on the Objectionable Dates in its Second Amended Notices**. On Sunday morning, September 7, 2014, counsel for Motion Games indicated that they were planning on the depositions going forward as noticed in Austin (on September 11 and 12) and would be making travel arrangements the next morning. (*See* Stulce Ex. 5, Dkt. 202-6). At 8:05 a.m. the next morning, Monday, September 8, 2014, counsel for Defendants indicated that Defendants would not be producing witnesses on the requested dates given that (1) the notices were still objectionable, (2) the locations for the Retailer Defendants were objectionable, and (3) the dates were unilaterally noticed in an unreasonable time frame (less than two weeks from the amended notice that Motion Games had taken three weeks to purportedly revise). *Id*. Counsel for Defendants also stated that given the Defendants' pending Motion to Stay Pending IPR and Motion to Sever and Stay, the best course would be to postpone discovery pending the Court's ruling on these motions and asked Motion Games if they would agree to stay discovery only until the Court ruled. *Id*. Counsel for Motion Games indicated that they would oppose such a motion (*see id.*), and the parties arranged a meet and confer the next day.

**The Parties Hold Another Meet and Confer on September 9, 2014**. At the September 9, 2014 meet and confer, Motion Games for the first time raised the possibility of seeking fees, but counsel for Defendants indicated that such a fee request was not warranted because the parties had ongoing disputes regarding the scope and logistics for the depositions and also had a legitimate dispute about whether discovery should be stayed. Counsel for Defendants also made clear that

---

[9] On September 3, 2014, Plaintiff also served substantive and custodial 30(b)(6) deposition notices for NCL (one of which was mistakenly addressed to NOA) (*see* Ex. 6 to Dkt. 203), for a combined total of 56 topics.

they were not refusing to provide any witnesses ever, but rather seeking a temporary stay until the Court ruled on the Motion to Stay Pending IPR and Motion to Sever and Stay.

**Defendants File An Emergency Motion to Stay and for a Protective Order Given Motion Games' Objectionable Notices**. It became clear that Motion Games intended to aggressively pursue objectionable depositions and other discovery from Defendants, including the peripheral Retailer Defendants, that is entirely divorced from the merits of this case and that needlessly threatens significant costs and burdens for the Defendants despite the lack of any immediate deadlines.[10] Defendants, therefore, filed their Emergency Motion seeking a stay of discovery and a protective order seeking to stop the noticed depositions from proceeding. (S*ee* Dkt. 203.) The Retailer Defendants have also served written objections to the second amended deposition notices. (*See* Exhibits D and E hereto).

## II. DEFENDANTS' OBJECTIONS TO THE DEPOSITIONS ARE PROPER AND PROVIDE NO BASIS FOR MOTION GAMES' REQUESTED RELIEF.

### A. Defendants Have Not Improperly Refused Discovery.

Plaintiff's motion is premised on the claim that Defendants have improperly refused to provide discovery in the form of depositions on the topics listed in its September 2 notices. But as set forth above, Plaintiff's inability to take the noticed depositions is a direct result of its own failure to provide well-crafted and reasonably tailored requests that provide adequate notice of the discovery sought. Since Motion Games first noticed the depositions in July, Defendants have attempted to work with Motion Games to arrive at proper topics and set acceptable deposition dates and locations, notwithstanding that Defendants' Motion to Stay Pending IPR and Motion to Sever and Stay have been pending since early July. Defendants did not in any way violate the "No Excuses" rule. Defendants only moved for a *temporary* stay of discovery and a protective order

---

[10] On August 26, the Court entered a Third Amended Docket Control Order (Dkt. 199) on Motion Games' motion. pushing back the initial dates for expert reports from September 15, 2014 to December 14, 2014.

after Motion Games indicated an intent to proceed with the depositions it noticed (on September 2) for dates than two weeks later – on September 11 and 12 – notwithstanding its continued failure to address Defendants' standing objections to the dates, location, and topics. Defendants have not refused to provide witnesses. They are instead seeking guidance from the Court on whether discovery should proceed in light of the two pending motions and Motion Games' sudden insistence on extensive and onerous discovery under an abusive, and unilaterally set, schedule.[11]

The depositions that Motion Games wish to aggressively pursue of the peripheral Retailer Defendants are entirely divorced from the merits of this case and needlessly threaten to impose significant costs and burdens for these defendants. That Motion Games has issued the same deposition notices to *every* defendant, suggests that these "custodial" depositions are meant for harassment purposes, rather than a legitimate effort to obtain discovery. Indeed, the topics do not, for the most part, even seek information about relevant custodians. The Retailer Defendants, as well as Retro Studios, have already responded to identical written discovery requests seeking the custodian identifications, indicating that, for the most part, they have no custodians with any relevant knowledge (*see* Exhibits F, G and H hereto). The topics noticed in these depositions instead are more about document collection, retention, and storage.

Motion Games is seeking to pursue these onerous depositions notwithstanding the peripheral status of the Retailer Defendants. As recent Federal Circuit and other rulings make clear, retailers like GameStop and Rent-A-Center are peripheral defendants in a patent infringement case such as this. *See In re Nintendo Co.*, 544 F. App'x 934, 942 (Fed. Cir. 2013) ("*Nintendo II*"), and *Nintendo III*, 756 F.3d at 1365-1366; *see also Order in UltimatePointer*

---

[11] Motion Games' original deposition notice included topics that were vastly overbroad, unrelated to the specific issues in this litigation, and often incomprehensible as written. Despite repeated objections and a meet and confer at which Motion Games admitted the deficiencies in its deposition notices, Motion Games has made minor revisions to a few topics, and it has not resolved the Defendants' objections. Worse, Motion Games apparently could not constrain itself to clarifying the requested topics and has improperly added entirely new and different topics.

*L.L.C. v. Nintendo Co., Ltd., et al.,* Nos. 11-cv-496 and 11-cv-571, (E.D. Tex. June 17, 2014) (Davis, J.), Docket No. 448.  Moreover, the Federal Circuit has stated that such peripheral retailers are unlikely to have documents or information relevant to the merits of a patent infringement suit, and that the case against the primary defendant, the manufacturer of the accused products, should proceed and be resolved before that against any such retailers.  *See Nintendo II*, 544 F. App'x at 942; *Nintendo III*, 756 F.3d at 1365-1366; *see also UltimatePointer Order*.  As such, Motion Games fails to articulate any reason why it must take these non-substantive, arguably harassing, depositions of the Retailer Defendants.

Defendants have raised bona fide objections to the noticed topics, locations and dates, and worked with Motion Games throughout its recent push for discovery, notwithstanding the pendency of Defendants' motions to stay.  These attempts to work with Motion Games demonstrate that Defendants have not violated the "No Excuses" rule of Local Rule CV-26(a).

**B.     Defendants Have Not Engaged in Gamesmanship or Misled Motion Games.**

As set forth in the preceding sections, Defendants have consistently maintained their objections to the topics, timing, and location of the noticed depositions since Motion Games served its initial notices in July.  Defendants also have responded to Motion Games' deposition notices in a timely fashion and engaged in a substantive meet and confer on August 12.

Motion Games' allegations of gamesmanship by Defendants are belied by Motion Games' own actions.  Motion Games has been in no hurry to resolve the issues between the parties so that the depositions can take place.  Motion Games failed to timely serve revised, acceptable deposition topics and follow through with depositions of NOA following the parties' August 12 meet and confer.  Motion Games let the NOA dates go by and waited ***three weeks*** after the August 12 meet and confer – until September 2, 2014 – to serve its revised notices.  These second amended notices only included minor revisions, and did not resolve the Defendants' objections.

The Defendants have been willing to work with Motion Games on the disputed issues, as the chronology above attests. For instance, Defendants early on informed Motion Games that its practice of serving less-than-two-weeks-in-advance notices with unilaterally selected dates for 30(b)(6) witnesses of five different parties was unrealistic and unreasonable. Despite giving "lip-service" in e-mails that Motion Games would work with Defendants if the proposed dates were unacceptable, Motion Games ultimately sought to pursue the objectionable September 11 and 12 deposition dates of the peripheral Retailer Defendants, as well as Retro Studios and NOA.

Moreover, while demanding that Defendants respond as soon as possible to Motion Games' requests, Motion Games requested that the Court push back the date for Motion Games to narrow the number of claims it was alleging were being infringed (*see* Dkt. 185) and the date for expert reports. (S*ee* Dkt. 195.)

### C. There is No Basis For an Award of Attorney Fees and Costs

Here, an award of attorneys' fees and costs is entirely unwarranted. Defendants have raised legitimate objections to the requested discovery, and there is, and has been, a dispute between the parties as to the topics, timing and location of the depositions. Defendants worked in good faith with Motion Games to sort those disputes out. Defendants' emergency motion to temporarily stay discovery and for a protective order preventing the requested depositions, by which Defendants sought guidance from the Court on these issues, was also an entirely appropriate response to Motion Games' discovery tactics.

The cases cited by Motion Games do not support its request for fees in this case. In fact, in one of the principal cases relied on by Motion Games, *CEATS, Inc. v. Continental Airlines, Inc.*, No. 6:10-cv-120, at *3 (E.D. Tex. Jan. 5, 2012) (Stulce Ex. 8), the defendant sought fees and costs for abuse of discovery, arguing that it had been prejudiced by a late production. Although the Court noted that plaintiff had engaged in "sloppy" review of its initial production, it was "not

inclined to sanction [Plaintiff] for 'abuse of discovery.'"  Likewise, in *Stambler v. Amazon.com, Inc.*, No. 2:09-cv-310, at *8-9 (E.D. Tex. May 23, 2011) (Stulce Ex. 7), the Court declined to award expenses where the Defendants objections were "substantially justified" because clarification of the interrogatories was necessary for "Defendants to be reasonably expect[ed] to respond."

### III. CONCLUSION

For the foregoing reasons, Defendants oppose Motions Games' Motion to Compel and the awarding of any attorney fees or costs against Defendants.  Rather, Defendants respectfully request that the Court grant the relief set forth in Defendants' Emergency Motion (Dkt. 203).

Dated:  September 17, 2014                     Respectfully submitted,

*/s/ Trey Yarbrough*
Trey Yarbrough
Bar No. 22133500
Yarbrough Wilcox, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

Brian D. Roche (IL Bar No. 6183795)
(admitted pro hac vice)
Email:  broche@reedsmith.com
Jennifer Yule DePriest (IL Bar No 6272137)
(admitted pro hac vice)
Email:  jdepriest@reedsmith.com
Vanessa Marti Heftman (IL Bar No. 6283464)
(admitted pro hac vice)
Email:  vheftman@reedsmith.com
Reed Smith LLP
10 South Wacker Drive
Chicago, IL  60606-7507
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6400

Barry J. Coyne (PA Bar No. 77007)
(admitted pro hac vice)
Email:  bcoyne@reedsmith.com
Reed Smith LLP
Reed Smith Centre

225 Fifth Avenue
Pittsburgh, PA 15222-2716
Telephone: +1 412 288 3131
Facsimile: +1 412 288 3063

Counsel for Defendants
Nintendo Co., Ltd., Nintendo of America Inc., Retro Studios, Inc., GameStop Corp. and Rent-A-Center, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 17th day of September, 2014. All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

*/s/ Trey Yarbrough*
Trey Yarbrough