IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| MOTION GAMES, LLC<br>Plaintiff,<br><br>vs.<br><br>NINTENDO CO., LTD.; *et al.*<br>Defendants. | §<br>§<br>§ Cause No. 6:12-cv-878-JDL<br>§<br>§ **JURY TRIAL DEMANDED**<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants'[1] Motion to Sever and Stay Case against Retailers[2] and to Reconsider Denial of Transfer of Venue (Doc. No. 137) as to Remaining Defendants in Light of the June 25, 2014 *In re Nintendo of America Inc.* Mandamus Ruling (Doc. No. 178) ("MOTION"). Motion Games, LLC ("Motion Games") responded (Doc. No. 183) ("RESPONSE"), Defendants have filed a reply (Doc. No. 187) ("REPLY"), and Motion Games filed a surreply (Doc. No. 192) ("SURREPLY). The Court denied Defendants' previous Motion to Transfer (Doc. No. 34) ("TRANSFER MOTION") from the Eastern District of Texas ("EDTX") to the Western District of Washington ("WDWA") (Doc. No. 137). Defendants now move to sever and stay the case against GameStop and RAC in order to facilitate transfer of the case against NCL, NOA, and Retro to the WDWA.

Having considered the parties' written submissions, the Court **DENIES** Defendants' Motion to Reconsider the Denial of Transfer of Venue as to the remaining defendants in view of the *In re Nintendo of America Inc.* Mandamus Ruling. Because the Motion to Sever and Stay the

---

[1] The Defendants are Nintendo Co., Ltd. ("NCL"), Nintendo of America Inc. ("NOA"), Retro Studios, Inc. ("Retro"), Rent-A-Center, Inc. ("RAC") and GameStop Corp. ("GameStop") (collectively "Defendants").
[2] "Retailers" collectively refers to RAC and GameStop.

case against the Retailers was made in order to enable transfer of the Nintendo Defendants, the Court **DENIES AS MOOT** the Motion to Sever and Stay the Case Against the Retailers.

## BACKGROUND

On November 16, 2012, Motion Games filed an action against NCL, NOA, Retro, GameStop, and RAC alleging infringement of U.S. Patent No. 6,167,607 (the "'607 Patent") ("COMPLAINT").[3] Motion Games is a Texas Limited Liability Company headquartered in Austin, Texas in the Western District of Texas ("WDTX"). *See* TRANSFER MOTION at 1; COMPLAINT at ¶4. Defendant NCL is a Japanese corporation headquartered in Kyoto, Japan. TRANSFER MOTION at 1. NOA is a Washington corporation headquartered in Redmond in the WDWA. NOA also has offices in Redwood City, California, in the Northern District of California. *Id.* at 1, 3. Retro is a subsidiary of NCL and is based in Austin, Texas, in the WDTX. *Id.* at 1. GameStop has been "alleged to be headquartered in Grapevine, which is located in the Northern District of Texas." *Id.* at 3; COMPLAINT at ¶16. RAC is "alleged to be a Delaware corporation headquartered in Plano," in EDTX. TRANSFER MOTION at 3. Motion Games accuses Defendants of infringing the Patents-in-Suit with video game hardware, software, and accessories for the Nintendo Wii videogame consoles and systems and Nintendo 3DS consoles and systems. (Doc. No. 133) THIRD AMENDED COMPLAINT ("TAC") at ¶64.

On March 4, 2013, NCL, NOA, Retro, and GameStop filed a motion to transfer all defendants to the WDWA. The Court denied the motion because Defendants "failed to show that GameStop and RAC would have been subject to jurisdiction in WDWA." (Doc. No. 137)

---

[3] On November 21, 2012, Motion Games filed an Amended Complaint (Doc. No. 3) alleging NCL, NOA, Retro, GameStop and RAC infringe U.S. Patent Nos. 7,843,429, 7,756,297, as well as the originally asserted '607 Patent (collectively the "Patents-in-Suit"). On November 7, 2013, Motion Games filed a Second Amended Complaint (Doc. No. 107) asserting the same three patents as in the Amended Complaint. On March 21, 2014 Motion Games filed a Third Amended Complaint (Doc. No. 133) asserting the same three patents as in the Amended Complaint and Second Amended Complaint.

2

MEMORANDUM OPINION AND ORDER ("ORDER") at 6. The Court also questioned the sufficiency of facts in the record to support a finding that NCL and Retro were subject to jurisdiction in the WDWA. *Id.* at 5-6. Finally, the Court found that, even if the threshold inquiry had been satisfied, the Defendants had failed to show that it is clearly more convenient for the parties and witnesses to transfer the case to WDWA. *Id.* at 7-16.

On June 25, 2014, the Federal Circuit vacated an Eastern District of Texas Court Order denying a motion to sever and transfer claims against NOA and to stay claims against eleven retailer defendants. The Federal Circuit directed the district court to grant the motion. *In re Nintendo of America, Inc.*, No. 2014–132, 2014 WL 2889911, at *2 ("*Nintendo III*"); *see also Secure Axcess, LLC v. Nintendo of America*, No. 2:13–CV–32–JRG, 2014 WL 986169, at *3-4 (E.D. Tex Mar. 7, 2014) (underlying case in *Nintendo III*). NOA is the only common defendant in *Nintendo III* and the present case. In light of the Federal Circuit decision, Defendants have asked the Court to reconsider the denial of transfer of venue and apply the reasoning and facts found in *Nintendo III* to grant a severance and stay of the case against the Retailers in order to facilitate the transfer of the Nintendo Defendants.

## **APPLICABLE LAW**

Defendants' motion for reconsideration falls under Rule 54(b) of the Federal Rules of Civil Procedure because the Court's motion to transfer order was not part of a final judgment in this case. Rule 54(b) provides in pertinent part that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." *Id.* Under Rule 54(b), the court has the discretion to reconsider and revise its prior orders without the timing restrictions and jurisdictional constraints that limit the court's authority to amend a

judgment under Rules 59(e) or 60(b) of the Federal Rules of Civil Procedure. *See eTool Development, Inc. v. National Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990).

The source of the court's authority to revise or amend an order or judgment is different for interlocutory orders than for final orders or judgments. However, many of the same policy considerations apply to motions for reconsideration under Rule 54(b) and Rule 59(e). Therefore, courts in this district frequently apply the same standards to the two rules. *eTool*, 881 F. Supp. at 748 citing *Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, No. 2:10–CV–328, 2012 WL 2036411, at *1 (E.D. Tex. June 6, 2012) ("It is this Court's practice to consider motions to reconsider interlocutory orders under the standard of Federal Rule of Civil Procedure 59(e)."); *Morgan v. Plano Indep. Sch. Dist.*, No. 4:04–CV–447, 2008 WL 686711, at *1 (E.D. Tex. Mar. 10, 2008) ("Rule 59(e) furnishes the appropriate standard" for reconsideration of an interlocutory order).

The Fifth Circuit has followed certain standards when applying Rule 59(e). First, a motion for reconsideration of an interlocutory order is "designed to serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Helena Labs. Corp. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Furthermore, "motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of judgment or to re-urge matters that have already been advanced by a party." *Helena Labs.*, 483 F. Supp. 2d at 539 (quoting *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994)). Finally, litigants "are expected to present their strongest

case when the matter is first considered." *Kazmi v. BAC Home Loans Servicing, LP*, No. 4:11–CV–375, 2012 WL 1899556, at *1 (E.D. Tex. May 24, 2012).

Courts have broad, but limited discretion under Rule 54(b) to revise prior interlocutory orders. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). To warrant reconsideration under Rule 54(b), courts in the Fifth Circuit follow Rule 59(e) and require the moving party to show: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *eTool*, 881 F. Supp. at 749; *Jacoby v. Trek Bicycle Corp.*, No. 2:11–cv–124, 2011 WL 3240445, at *1 (quoting *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)); *see also Triton Tech*, 2012 WL 2036411, at *1; *Wi–Lan, Inc.* v. Acer, Inc., Nos. 2:07–CV–437, 2:07–CV–474, 2010 WL 5559546, at *2 (E.D. Tex. Dec. 30, 2010); *Beneficial Innovations, Inc. v. Blockdot, Inc.*, Nos. 2:07–CV–263, 2:07–CV–555, 2010 WL 2246291, at *2 (E.D. Tex. June 3, 2010).

## **ANALYSIS**

The parties dispute whether the Court should reconsider the motion to transfer. In particular, they disagree as to whether the Federal Circuit's decision in *Nintendo III* represents an intervening change in controlling law. Defendants claim that the Federal Circuit in *Nintendo III* established an intervening change in controlling law when it ruled, "Since Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, in any forum," and "Where, as here, it is unclear whether the entire action could have been brought in the transferee venue, courts may sever defendants for purposes of transfer." *Nintendo III* at

*1, 3. As such, Defendants argue that *Nintendo III* established an intervening change in controlling law by clarifying the uncertainty of the role of peripheral defendants in severance and transfer analysis. REPLY at 2. Defendants justify their decision not to include a motion to sever and stay the case against the Retailers in their original motion by arguing that at the time they filed their first motion to change venue "questions of joinder were in flux" and "motions to sever and transfer venue were defeated." REPLY at 1, 2 citing *Nintendo III* at *1; Order, *UltimatePointer LLC v. Nintendo Co., Ltd., et al.*, 6:11-cv-496 and 6:11-cv-571 at *2 (E.D. Tex. June 17, 2014), Doc. No. 448 ("*UltimatePointer* Order"). Finally, they argue that the circumstances of this case are "virtually identical" to those of *Nintendo III*. MOTION at 4. Therefore, they argue, the Court should find that there has been an intervening change in controlling law.

Motion Games contends that *Nintendo III* is not an intervening change in controlling law. SURREPLY at 1. They argue that Defendants could have made this motion at the outset of litigation, but Defendants, instead, made a tactical decision to attempt to transfer all defendants to the WDWA. RESPONSE at 6. Motion Games further notes that Defendants must have considered a motion to sever, stay, and transfer to be a viable strategy because NOA, as a defendant in *Nintendo III*, made such a motion prior to their original motion to transfer this case.

Second, Motion Games argues that the Defendants' motion should be denied because the Federal Circuit has stressed "the importance of addressing motions to transfer at the outset of litigation." RESPONSE at 5 quoting *In re EMC Corp.*, 501 F. App'x 973, 975-76 (Fed. Cir. 2013); *see also In re Fusion-IO, Inc.*, 489 F. App'x 465, 465–66 (Fed. Cir. 2012). Finally, they argue that Defendants' claim that the circumstances of *Nintendo III* "are virtually identical" to the present case is incorrect. They note that the defendants in *Nintendo III* properly moved to sever

6

peripheral retailers and transfer at the outset of litigation. In contrast, when Defendants made the present motion to sever, stay, and transfer, the present case had been pending for over eighteen months, discovery was scheduled to close on December 1, 2014, and the Court had already held a *Markman* hearing in May 2014 to determine claim construction and Defendants' motion for summary judgment of indefiniteness.

To justify reconsideration under Rule 54(b) the Defendant must show that there has been an intervening change in controlling law. A motion for reconsideration should not be used to re-litigate matters that have already been advanced by the party or to raise arguments that should have been made previously. An analysis of *Nintendo III* under these principles reveals that it is not an intervening change in controlling law. With regard to the severance of retailer defendants in order to facilitate transfer, the Federal Circuit in *In re Nintendo Co., Ltd.*, 544 Fed. App'x 934, 940 (Fed. Cir. 2013) ("*Nintendo II*") noted:

> [T]he retailers will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add little to nothing regarding how the technology underlying the accused products works. Indeed, we and other courts have all but said as much in the analogous context of the 'customer suit exception,' which endorses staying a case against a customer or retailer in light of the notion that the manufacturer is the "true defendant."

*Id.* (citing *Katz v. Lear Siegler, Inc.*, 909 F.2d 1495, 1496 (Fed. Cir. 1990); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)). Courts in this district and others have reached similar conclusions. *See e.g. LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 811 (E.D. Va. 2001) (citing *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 664 (E.D. Va. 1998)) ("When jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant, and transfer the remaining claims to a more convenient district pursuant to § 1404(a)."); *Shifferaw v. Emson USA*, No. 2:09–CV–54–TJW–CE, 2010 WL 1064380, at *3

(E.D. Tex. Mar. 18, 2010) (severing and staying claims against retailers while transferring claims against manufacturer to a clearly more convenient venue); *MGT Gaming, Inc. v. WMS Gaming, Inc.* 978 F. Supp. 2d 647, 665 (S.D. Miss 2013) (finding that severance was appropriate for casino defendants by comparing them to "other second-hand entities like retailers or distributors where they were not involved and do not have substantive knowledge about the patent infringement, which would begin at the manufacture stages").

Furthermore, Defendants' justification for their decision not to make this motion at the outset of litigation is unconvincing. They claim that at the outset of litigation motions to sever and transfer venue were unsuccessful. REPLY at 2 citing *Nintendo III* at *1; *UltimatePointer* Order at 2. This argument is either misleading or incomplete. The two decisions Defendants cite to support this claim, *Nintendo III* and *UltimatePointer*, were both issued after Defendants filed their original motion to transfer, and neither underlying case was controlling law at the time Defendants filed their original motion. Defendants filed their original motion to transfer on March 4, 2013, but the district court order denying the motion to sever, transfer, and stay that was vacated by *Nintendo III* was not signed until March 7, 2014. *Secure Axcess, LLC v. Nintendo of America*, No. 2:13–CV–32–JRG, 2014 WL 986169 (E.D. Tex Mar. 7, 2014) (underlying case in *Nintendo III*). Similarly, Judge Davis denied NOA's motion on March 27, 2013 more than two weeks after Defendants submitted their original motion. Order, *UltimatePointer v. Nintendo Co., Ltd.* Nos. 6:11-cv-496 and 6:11-cv-571 (E.D. Tex. Mar. 27, 2013) (Doc. No. 257). Thus, any uncertainty caused by the underlying decisions in *Nintendo III* or *UltimatePointer* did not exist at the time Defendants filed their original motion to transfer.

To justify reconsideration under Rule 54(b) the Defendant must show an intervening change in controlling law. The *Nintendo III* mandamus ruling did not establish a change in

controlling law.  When Defendants originally moved to transfer the case the law had developed to a point that clearly showed a strategy of severing retailers in order to facilitate transfer was available to the Defendants.  *Nintendo III* did not afford Defendants any options that were not available to them at the time of their original motion.  Furthermore, that NOA was a party to the defendant's motion to sever and transfer in *Nintendo III* shows that Defendants were aware that they could have made such a motion at the outset of litigation and that NOA considered such a motion to be a viable legal strategy.  NOA's motion in *Nintendo III* therefore indicates that Defendants pursued an alternate strategy of transferring the entire case to the WDWA.

Furthermore, a motion to sever peripheral defendants in order to facilitate transfer, just as any other motion to transfer venue, should be brought at the outset of litigation.  Defendants decided to wait over eighteen months before bringing this hybrid motion for transfer before the court.  In essence, the current motion is an alternate theory for a previously argued and decided motion.  There has been no manifest error in law, no overlooked facts, and no change in law.  The current motion is merely an attempt by the Defendants to implement a new strategy.  As such, the Court will not reconsider the motion to transfer.  Furthermore, the motion to sever and stay the peripheral Retailers was made in order to facilitate transfer.  Because the Court will not reconsider the motion to transfer, the motion to sever and stay the case against the Retailers in order to facilitate transfer is moot.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Reconsider Denial of Transfer in Light of the June 25, 2014 *In re Nintendo of America Inc.* Mandamus Ruling is **DENIED**.  Furthermore, the Motion to Sever and Stay the case against the Retailers was made as part of a

hybrid motion to facilitate transfer of the Nintendo Defendants. Accordingly, the Motion to Sever and Stay the Case against the Retailers (Doc. No. 178) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 23rd day of September, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE