**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| MOTION GAMES, LLC<br><br>      Plaintiff,<br><br>v.<br><br>NINTENDO CO., LTD.; NINTENDO OF AMERICA, INC.; RETRO STUDIOS, INC.; RENT-A-CENTER, INC.; and GAMESTOP CORP.,<br><br>      Defendants. | Case No. 6:12-cv-878-JDL<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF MOTION GAMES, LLC'S OPPOSITION TO DEFENDANTS'
SECOND EMERGENCY MOTION TO STAY PROCEEDINGS**

Plaintiff Motion Games, LLC ("Motion Games") submits this memorandum in opposition to Defendants' latest "Emergency Motion" to Stay Proceedings. [Dkt. No. 223.] Undeterred by the cautionary note in the Court's recent Order [Dkt. No. 225 at n. 1], Defendants' continue to press their *fifth* motion seeking a stay of all or part of the proceedings herein. [*See* Dkt. Nos. 121, 176, 178, and 203.] The Court properly denied the first four such motions. Defendants' repeated attempts to avoid litigating this case on the merits, and in the process require Plaintiff to incur the unnecessary expense of opposing numerous motions to stay, is obstructionist. Particularly in light of the Court's recent warning, it would be appropriate to require Defendants to reimburse Motion Games' for the costs and expenses incurred in responding to this latest frivolous motion —a second "emergency motion" to stay pending Defendants' objections to the denial of their prior motions to stay. Such sanctions would hopefully deter these Defendants and other litigants from further vexatious litigation tactics.

I.     **INTRODUCTION**

For the same reasons set forth in Motion Games' oppositions to Defendants' four previously denied stay motions [*see* Dkt. Nos. 121, 176, 178, 203, and respective briefing], this latest "emergency" motion to stay should be denied as well. In fact, Defendants' latest stay motion has far less merit than the motions this Court previously denied because of Defendants' continued discovery delays and the further passage of time. Indeed, Defendants' tactics have prevented even a single deposition from being completed in this case despite the fact that Motion Games first requested such depositions as early as July 2 – almost four months ago. Defendants' imposition of a unilateral stay of discovery while their prior motions were pending was a direct violation of Local Rule CV-26(a) "no excuses" provision. This current motion is yet another example of this improper strategy.

Defendants' justification for the latest request for a stay is that they have filed objections

to the Court's well-reasoned denials of their previous motions to stay pending *inter partes* review ("IPR") and to sever and stay as to the Retailer Defendants. As noted above, under the Local Rules of this Court, "a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue." Local Rule CV-26(a). Here, the Rule applies with even greater force as the motions are no longer "pending;" they have already been denied. Yet Defendants continue to delay discovery and instead file motion after meritless motion.

Defendants now improperly seek to shift the blame for discovery delays onto Motion Games in a transparent attempt to bolster their judicial economy arguments. These arguments are disingenuous and should not be countenanced by the Court. First, contrary to Defendants' mischaracterizations, Motion Games has been actively engaged in discovery for over a year, including serving interrogatories and written discovery requests, as well as analyzing documents and thousands of lines of source code produced on a single Standalone Computer by Defendants. That analysis revealed that Defendants failed to meet their discovery obligations, including failing to produce complete source code and documents for Accused Products. Just yesterday, Defendants provided a ***supplemental*** document production of over 25,000 pages of new documents (an increase of over 65% of their original production). Second, Defendants' delay argument is irrelevant because Motion Games has been guided by the Docket Control Order ("DCO") in scheduling depositions, which sets forth the relevant deadlines (including the claim construction schedule) in preparing its case. Motion Games could not predict that Defendants would obstruct and delay discovery for four months leading up to the expert disclosure deadline, and then utilize that delay to bolster their latest motions to stay.

II. **STATEMENT OF FACTS**

    a. **This Case Has Progressed Significantly.**

The Complaint in this case was filed on November 16, 2012. [Dkt. No. 1.] Discovery has been proceeding for many months and is set to close on March 1, 2015. Defendant NOA did not file its Petitions seeking IPR until November 19, 2013, more than one year after this action was commenced. Even after the IPRs were instituted by the PTO on May 19, 2014, Defendants further delayed until June 25, 2014 in filing their first of four subsequent motions to stay all of or part of the proceedings herein (an earlier motion to stay was previously denied). Claim construction issues were fully briefed in April 2014 and argued in May 2014. Interrogatories were served on all Defendants by Plaintiff on June 2, 2014. Trial is scheduled for October 13, 2015. [*See* Dkt. No. 199.]

While Defendants focus only on the number of depositions taken and emails produced in this case (two sources of discovery that they have delayed to buttress their stay motions)[1] to purportedly demonstrate that discovery is in its early stages, they ignore all of the other elements of discovery that have already occurred.[2] For example, Motion Games has: (1) produced all of its documents in accordance with its discovery obligations, (2) reviewed the documents that Defendants' represented were part of a "substantially complete" production, and (3) retained experts and for several months had them reviewing thousands of lines of source code. Moreover, each of the Defendants has provided answers to fifteen interrogatories and five written discovery requests. Motion Games has also served initial and first amended P.R. 3-1 disclosures for the Accused Products and Defendants have served initial and amended P.R. 3-3 disclosures (which were the subject of motions practice before the Court [Dkt. Nos. 115, 118, 119, 120]). And, after

---

[1] For example, Motion Games' served its requests for email production on NOA on September 4, 2014. [Ex. 1.] Therefore, given the typical discovery response period of 33 days, NOA should have produced responsive emails on October 9, 2014. However, NOA has not produced a single email or provided a date certain as to when the production will occur.

[2] Indeed, depositions are often one of the last components of discovery because they require all of the documents and information to have been previously produced and reviewed before meaningful and efficient examinations of an opponent's witnesses can occur.

over three months of requests by Motion Games, some depositions finally have been scheduled to commence later this week. [*See* Ex. 2.][3]

Motion Games has also pursued discovery from an unwilling third party (and Nintendo supplier) Taiwanese company ("PixArt") to gain access to the source code for a key component of the Accused Product. This involved several months of negotiations, Court ordered letters rogatory [Dkt. No. 198], and the coordination of Motion Games' attorneys and experts to travel to Taiwan to review the code. That review is scheduled for October 27.

### b. Defendants Imposed a Unilateral Stay of Discovery.

After reviewing Defendants' document production, Motion Games noticed Rule 30(b)(6) depositions on July 2, 2014. [Dkt. No. 202-2.] Rather than comply with those requests, Defendants engaged in misleading conduct designed to avoid producing a witness for over ***three months*** while their prior motions to stay were pending, as detailed in Motion Games' motion to compel. [Dkt. No. 202 at p. 3-7.] If not for Defendants' misconduct, custodial ***and*** substantive depositions would likely have been substantially complete by now. Instead, Motion Games has been unable to take even initial "custodial" depositions to determine the reasons for Defendants' extremely sparse and incomplete document production. Defendants finally agreed to make witnesses available on October 23 (Retro) and November 3 (NOA)— four months ***after*** they were initially noticed and less than four months before the scheduled discovery close. Motion Games believes that these custodial depositions will reveal that a significant number of highly relevant documents were not produced.

### c. Defendants' Refusal to Provide A Custodial Deposition Was Designed to Hide Their Deficient Document Production.

The Docket Control Order required that Defendants complete their P.R. 3-4(a) document productions for accused products on August 13, 2013. [Dkt. No. 83.] The Discovery Order

---
[3] References to "Ex." herein refer to the exhibits attached to the Declaration of Patrick M. Lafferty filed herewith.

required that all additional documents be produced by October 31, 2013.  [Dkt. No. 81.]  Thus, all relevant documents should have been produced in this case almost one year ago.

On *November 20, 2013*, Motion Games first notified Defendants that their document production, which consisted of less than 40,000 pages at the time, appeared to be missing key documents.  [Ex. 3.]  Defendants responded on November 27, 2013, stating that they "are well aware of their discovery obligations [and] have complied with them."  [Ex. 4.]  But, in correspondence from September 8-18, 2014, after analyzing all of the documents produced in the case and having requested custodial depositions *since July 2*, Motion Games specifically identified not only categories of relevant information that it believed had not been produced, but specific documents that appeared to be missing from Defendants' production.  [Ex. 5; Ex. 6 at p. 5-7.]  These included five deposition transcripts from prior cases and dozens of deposition exhibits; documents that were specifically requested almost a year earlier.  [*Id*.]  In fact, Motion Games still does not have access to a single discovery document (such as responses to requests for admissions) from any of Defendants' prior litigations involving patent infringement of the Accused Products.  [Ex. 5 at p. 2.][4]  Motion Games also identified specific documents that apparently describe the operation of some of the Accused Products (referred to as "Master Checklists") that were missing from the production, as well as source code for numerous Accused Products that did not appear on the Standalone Computer.  [Ex. 6 at p. 5-6.]

Despite repeated requests by Motion Games, it was not until October 20 that Motion Games received Defendants production of some of the missing materials, which included an additional **25,000 pages** of new documents.  [Ex. 7.]  This production constituted over a 65% increase of their original, "substantially complete" production, which included less than 40,000 pages of documents.  Defendants also have refused to provide a date certain as to when the

---

[4] Due to issues involving password-only access to the documents, Motion Games has not yet been able to review Defendants' most recent October 20, 2014 production.

remaining documents, which were due over a year ago, will finally be produced or how many documents will be included in that production. [Ex. 6 at p. 1.] But what is evident is that the October 20 document production may only be the beginning. Of course, only Defendants know the documents that are in their "possession, custody, or control," which is why a custodial deposition is *required* to get to the merits of the case, particularly when, as here, Defendants have shown an inability to comply with their discovery obligations.

As another example, Defendants only recently alleged for the first time that highly relevant documents concerning the manufacture of the Nintendo Wii (including the cost of a key component in the computer vision system at issue in this case) were not produced because "Nintendo does not maintain this information in the ordinary course as Nintendo's electronic manufacturing services company purchases DPD components directly from PixArt." [Ex. 6 at p. 2.] Defendants did not previously identify this alleged company—and have still not provided the name of the company—which again shows the importance of the custodial depositions Motion Games noticed over three months ago. While it strains credulity that Nintendo would not have, at the very least, "control" over documents related to the manufacture of its Nintendo Wii, if Motion Games had learned that this information was available from another company three months ago, it would have been able to start the process of requesting and/or compelling the production of this information long ago.

### III. ARGUMENT

#### A. Allowing Defendants' "Emergency" Motion Would Prejudice Motion Games.

"The party seeking a stay bears the burden of showing that such a course is appropriate." *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-00224, slip op. at 2 (E.D. Tex. Jan. 14, 2014) (Love, Mag.) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). To meet this burden, the movant must present "facts or arguments that persuade the Court to

deviate from its established policy [in favor of denying] motions to stay." *Portal Techs. LLC v. Yahoo! Inc.*, 2013 WL 7760960, at *1 (E.D. Tex. Jan. 3, 2013) (Gilstrap, J.). This Court and other courts have routinely denied opposed motions to stay litigation pending instituted *inter partes* and covered business method reviews. *See Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-00224-JDL (E.D. Tex. Jan. 14, 2014) (Love, Mag.); *Lennon Image Techs., LLC v. Lumondi Inc.*, No. 2:13-cv-00238 (E.D. Tex. Jan. 6, 2014) (Gilstrap, J.); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068 (E.D. Tex. Nov. 8, 2013) (Payne, Mag.); s*ee also Walker Digital, LLC v. Google, Inc.*, No. 11-318-LPS, 2014 WL 2880474 (D. Del. June 24, 2014); *McRo, Inc. v. Bethesda Softworks LLC*, No. 12-1509-LPS-CJB, 2014 WL 1711028 (D. Del. May 1, 2014); *Nexans Inc. v. Belden Inc.,* No. 12-1491-SLR-SRF, 2014 WL 651913 (D. Del. Feb. 19, 2014); *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494 (S.D. Ohio Feb. 11, 2014); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028 (C.D. Cal. 2013).

This Court has already found that Defendants' belated motions to stay would be prejudicial to and present a tactical disadvantage to Motion Games, and denied them, in part, on this basis. [Dkt. Nos. 212, 213.] Consistent with those rulings, a grant of the present "emergency" motion to stay pending a ruling on objections to those denied motions would be highly prejudicial and present a clear tactical disadvantage to Motion Games. Accordingly, this factor weighs strongly against granting a stay.

### 1. A Stay Would Reward Defendants' Numerous Delays.

A stay would only reward Defendants' repeated delays, including Defendant NOA's delay in filing its petitions for IPR, Defendants' subsequent delay in requesting a stay based on the instituted IPRs, their delay in filing their second motion to transfer (couched as a motion to sever,

stay, and transfer), their continued failure to provide Motion Games with documents and deposition discovery in accordance with the schedule in the DCO, and their repeated motions seeking stays on an "emergency" basis. At some point, this obstruction must end and the case must be made ready for trial.

"Courts have expressed reluctance to grant a stay where the timing of the request for PTO review suggests a dilatory intent on the movant's part." *Nexans Inc. v. Belden Inc.,* No. 12-1491-SLR-SRF, 2014 WL 651913, at *3 (D. Del. Feb. 19, 2014). Defendants' delays in seeking IPR, in seeking a stay based on the IPR, in seeking to sever and stay as to the Retailer Defendants, in seeking a stay on an "emergency" basis while those motions were pending, and then seeking another "emergency" stay even after the motions were denied, are just part of clear pattern of doing anything possible to bolster their judicial economy arguments and avoid going to trial before this Court. Accordingly, Defendant's fifth attempt at a stay, and fourth in just the last few months, should be denied. *See Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-00224, slip op. at 2 (E.D. Tex. Jan. 14, 2014) (Love, Mag.) (denying a stay requested ***less*** than one month after institution of IPRs which were requested ***one year after*** litigation began); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1031 (C.D. Cal. 2013) (denying motion to stay litigation pending completion of instituted IPR where "Defendant did not file its *inter partes* review petitions until almost a year after being served with the complaint").

### 2. Defendants' Objections Do Not Provide a Reasonable Basis to Stay This Case.

Defendants summarily conclude that a stay is "warranted" simply because they have filed objections to the Court's denials of their motions to stay pending IPR and motion to sever and stay. [Dkt. No. 223 at 1.] But their objections are simply a rehash of the arguments this Court has already rejected in denying the motions. Defendants have no basis for continuing to press this

fifth stay motion, particularly in light of the Court's warning in its recent Order regarding obstructionist tactics. [Dkt. No. 225 at n.1.]

Defendants completely ignore the important fact that, unlike the facts presented in *Nintendo III* where Nintendo timely sought to sever and stay the Retailer Defendants and to transfer venue ***at the outset*** of the litigation, in this case they chose, for tactical reasons, not to move to sever and stay the Retailer Defendants, but instead chose to file their unsuccessful motion to transfer venue as to all Defendants. The Court properly found that they should not get a "second bite at the apple."

### 3. Defendants' Attempt to Shift Blame to Motion Games is Disingenuous.

Defendants attempt to mislead the Court by blaming Motion Games for delays in discovery. First, as detailed above, Motion Games has actively engaged in significant discovery throughout this case, particularly after the claim construction process was completed in May 2014, including pursuing difficult discovery abroad from Nintendo's Taiwanese supplier. Second, Motion Games has actively pursued depositions for almost four months now. Had witnesses been timely produced in response to the July 2 depositions notices, and had Defendants' document productions been "substantially complete" as represented, many the depositions in this case could have been completed by now. Instead, Defendants' have improperly obstructed this discovery for four months, effectively preventing a single deposition from going forward. Incredibly, Defendants now argue that their improper, unilateral stay of discovery actually weighs in favor of a formal stay order from the Court. This is clearly vexatious litigation conduct.

Defendants also continue to put forth the fiction that custodial depositions are somehow divorced from the merits of the case. [Dkt. No. 223 at 8.] While not themselves "substantive," depositions that identify the existence of highly relevant documents that have not been produced are often critical to developing a "substantive case," particularly where, as here, a party's

document production is clearly deficient. While the Court has observed that the custodial notices were "seemingly unconnected to the merits of the case," this was likely due to Defendants' misrepresentation to this Court on the state of their document production, which Defendants again perpetuate in their fifth motion to stay. As clear from the examples below, Defendants' failure to comply with significant discovery obligations, while simultaneously representing that their productions were "substantially complete," confirms the necessity of taking custodial depositions prior to taking depositions on substantive topics.

For example, Defendants told this Court that Motion Games' complaints about Nintendo's document productions are "an apparent attempt to explain [Motion Games'] otherwise inexplicable failure to pursue depositions in this case." [Dkt. No. 223 at n. 3.] Defendants also stated that "Nintendo's document production was substantially complete in Fall 2013, and [was] confirmed (subject to some supplementation) by Nintendo's counsel in January 2014." [*Id.*] That "substantially complete" production was supplemented by over 65% on October 20, 2014—less than two weeks after these statements were made. [Ex. 7.] Similarly, as discussed above, highly relevant documents relating to the manufacture of the Accused Products have not been produced because they allegedly reside in an unidentified entity: "Nintendo's manufacturing services company." But, Nintendo has not substantiated its claims of not having control over these documents.

### 4. The Mutual Extension of Certain Deadlines Does Not Justify a Stay.

Defendants also argue that because some deadlines were extended, Motion Games "cannot be heard to complain about a stay until [Defendants'] Objections are resolved." [Dkt. No. 223 at 2.] This argument is again disingenuous. First, the extension moved deadlines for ***both*** Motion Games and Defendants because the claim construction ruling had not, and still has not, issued. [Dkt. No. 195 at ¶1.] Second, the extension also was needed because Motion Games was forced

to seek discovery abroad from Nintendo's third party Taiwanese supplier, who refused to provide the information in the U.S., despite already having done so in an earlier Nintendo litigation. [*Id.* at ¶2.]

### B. The "Simplification of Issues" Factor Is Neutral.

This Court found that the "simplification of issues" factor was the lone factor that weighed in favor of granting a stay pending IPRs. It is true that the PTAB's final written decisions would *potentially* resolve issues of obviousness in view of alleged prior art, but not other issues before the Court such as subject matter eligibility, indefiniteness, written description, unclean hands, waiver, estoppel, prosecution history estoppel, infringement or laches. Notably, grounds that a petitioner may raise and the PTAB may consider during IPR are limited to patents and printed publications under 35 U.S.C. §§ 102 and 103. *See* 35 U.S.C. § 311(b). Further, NOA's petitions for IPR only raised obviousness under § 103. However, obviousness under § 103 is only one of Defendants' numerous alleged invalidity defenses and counterclaims. Defendants in their answer have alleged invalidity under §§ 101 and 112 and argue that Motion Games is barred from recovery under unclean hands, waiver, estoppel, prosecution history estoppel, and/or laches. [*See* Answer of NCI and NOA (Dkt. No. 140 at ¶¶ 23-24, 27-28).] These defenses and counterclaims fall outside the unambiguous limited statutory scope of IPR proceedings. *See* 35 U.S.C. § 311(b). Thus, a stay would not simplify the issues as to these additional defenses and counterclaims. *See Unifi*, slip op. at 6 ("[E]ven if the Defendants are estopped from asserting invalidity under 102 or 103 as to certain prior art, all Defendants may maintain that the asserted claims are invalid under 35 U.S.C. § 112 ¶¶ (1) and (2)."); *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494, at *5 (S.D. Ohio Feb. 11, 2014) ("Because the PTO will not address [Defendants' asserted defenses of invalidity under 35 U.S.C. § 112, estoppel, laches,

and *res judicata*], their presence demonstrates further that significant issues remain for this Court to address regardless of the outcome of the IPRs.").[5]

Defendants argue that simply because the PTAB granted the IPR petitions under a lesser standard than this Court will have to apply, Defendant NOA is likely to succeed at the PTAB in invalidating all asserted patent claims and thereby obviate the need for any discovery in the entire case. [Dkt. No. 223 at 3.] But if that were the law, there would be no need for IPR proceedings at all beyond the PTAB decision to institute an IPR —all patents would simply be invalidated based only on the grant of a petition— and all stay motions would be moot.[6] Of course, not all IPRs result in claims being invalidated. Indeed, Motion Games' counsel successfully defeated attempts to invalidate all asserted claims of three patents in three prior IPRs. The Patent Office issued final written decisions after institution holding that the Petitioner in each case failed to meet its burden of proving obviousness of any asserted claim. [Exs. 8, 9.]

### C. Nintendo's "Emergency" Request Comes Too Late.

Nintendo's latest "emergency" request comes far too late given the advanced status of this case, including the fact that this case was filed almost two years ago, and trial is scheduled in less than a year. Defendants' motion simply repeats arguments which have already failed. Accordingly, this motion should be denied based on the authority previously relied upon by the Court in denying the previous stay motions. *See Unifi*, slip op. at 7 (denying stay where "claim construction was already underway by the time [accused infringer] filed for the instant stay"); *see*

---

[5] *See also Endotach LLC v. Cook Medical Inc.*, No. 1:13-cv-01135-LJM-DKL, 2014 WL 852831, at *5 (S.D. Ind. Mar. 5, 2014) ("[T]he scope of the issues that could be resolved by the IPR are more narrow than those that can be addressed in this litigation. . . . [Accused infringer] is relying on 35 U.S.C. § 112 invalidity claims that cannot be addressed in an IPR as well as on a laches defense, which has no connection to the claims of the '417 patent."); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-Orl-37DAB, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013) ("Even if the USPTO decides to initiate a review, the law makes clear that the review itself is limited to anticipation and obviousness, which are only two of the many, many defenses to patent infringement."); *Everlight Elecs. Co., Ltd. v. Nichia Corp.*, No. 12-cv-11758, 2013 WL 1821512, at *10 (E.D. Mich. Apr. 30, 2013) ("[A] stay will not simplify the issues related to the '215 patent because Defendants have asserted defenses such as laches, waiver, estoppel, and standing which will not be reviewed by the PTO.").

[6] The PTAB had not even received any argument or evidence from Motion Games prior to instituting a trial.

*also Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494, at *3 (S.D. Ohio Feb. 11, 2014) ("Courts regularly deny stay requests when, as here, the litigation has progressed significantly toward trial."); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1031 (C.D. Cal. 2013) ("While not much discovery has occurred, Defendant did not file its *inter partes* review petitions until almost a year after being served with the complaint, and during that time the Court spent substantial effort construing the claims. . . . Defendant could have filed its petitions and this motion before claim construction. This factor weighs against a stay.").

In *Unifi*, this Court denied an accused infringer's motion to stay litigation pending an instituted IPR where the litigation had been pending for over a year and a half. *See Unifi*, slip op. at 5. By the time the Court decides the present motion, this litigation will have been pending for *two years*, far longer than the 18 months in *Unifi*, and discovery, to the extent it has not been thwarted by Defendants, as well as the claim construction process, are well underway.

Accordingly, the advanced status of this case and trial schedule again weigh heavily against allowing Nintendo's request for a stay. *See Unifi*, slip op. at 7 (denying stay where the trial date had been set, discovery and claim construction were underway, and the litigation had been pending for over a year and a half); *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068 (E.D. Tex. Nov. 8, 2013) (Payne, Mag.) ("The late stage of the proceeding and [accused infringer's] failure to move to stay the case earlier in the trial process weighs heavily against a stay.")

### IV. MONETARY SANCTIONS FOR FEES INCURRED IN RESPONDING TO A FIFTH MOTION TO STAY ARE WARRANTED.

Defendants' decision to file its ***fifth*** stay request is not only vexatious, but is clearly meant to be obstructionist. In light of the Court's admonition in its recent Order regarding obstructionist

tactics [Dkt. No. 225 at n.1], Defendants should not be permitted to file and press motion after meritless motion without repercussions. Defendants have made it clear, both through their motion practice and failure to comply with the Court's discovery deadlines, that they will do anything to avoid litigating this case on the merits in this district, and intend to continue to waste this Court's and Motion Games' resources. The filing and maintenance of the present motion to stay pending the ruling on its objections to the denial of its prior motions to stay is a deliberate abuse of the judicial process, and is "'advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort [and therefore] clearly warrants recompense for the extra outlays attributable thereto.'" *See Batson v. Neal Spelce Associates, Inc.*, 805 F. 2d 546 (5th Cir. 1986) (*quoting Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C.Cir.1980)).

Accordingly, granting Motion Games' request for its fees and costs incurred in responding to this motion, and/or other relief deemed appropriate by the Court, is clearly reasonable and within its discretion.

### V. CONCLUSION

For all the foregoing reasons, Motion Games respectfully requests that Defendants' Second Emergency Motion to Stay be denied.

Dated: October 21, 2014       Respectfully submitted,

*/s/ Richard S. Meyer*
Gregory P. Love
Texas Bar No. 24013060
**STEVENS LOVE, PLLC**
P. O. Box 3427
Longview, Texas 75606-3427
Telephone: (903) 753-6760
Facsimile: (903) 753-6761

greg@stevenslove.com

Michael A. O'Shea (*pro hac vice*)
Leonard C. Suchyta
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue NW
Washington, DC 21500
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Joshua M. Kalb
**HUNTON & WILLIAMS LLP**
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308
Telephone: (404) 888-4000
Facsimile: (404) 888-4190

D. Michael Underhill
Richard S. Meyer
Patrick M. Lafferty
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) -237-2727
Facsimile: (202) 237-6131
E-mail: wisaacson@bsfllp.com
E-mail: munderhill@bsfllp.com
E-mail: rmeyer@bsfllp.com

*ATTORNEYS FOR PLAINTIFF*
   Motion Games, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 21st day of October 2014.

*/s/ Gregory P. Love*
Gregory P. Love