**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| MOTION GAMES, LLC<br><br>      Plaintiff,<br><br>v.<br><br>NINTENDO CO., LTD.; NINTENDO OF AMERICA INC.; RETRO STUDIOS, INC.; RENT-A-CENTER, INC.; and GAMESTOP CORP.,<br><br>      Defendants. | Case No. 6:12-cv-878-JDL<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF MOTION GAMES, LLC'S REPLY IN SUPPORT OF ITS OPPOSED
MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**

Nintendo opposes this motion based on nonsensical positions and speculation. Its Opposition [Dkt. No. 263] effectively confirms that (1) the Proposed Amendments will cause no prejudice, and (2) Motion Games was diligent.  Motion Games has repeatedly asked Nintendo to withdraw its opposition, even proposing that the Motion be stayed pending Motion Games' P.R. 3-6 Amendments.  Nintendo refuses.  [Ex. 28 at 1-2 and 4-5.] Motion Games respectfully requests that the Court award it fees and costs incurred for having to pursue this procedural motion.  [*See* Dkt. No. 249 ("Any further unreasonable motion practice apart from the merits of this case will result in an award of fees and costs to the prevailing party.").]

## I. The Court's Claim Construction Order Does Not Obviate the Present Motion.

Motion Games will soon amend its contentions, per P.R. 3-6, to respond to the Court's recent Claim Construction Order.  [Dkt. No. 262.]  In contrast, the Proposed Amendments *predate* the Court's Order, and are based on recently completed discovery.  Among other things, the Proposed Amendments include citations to the PixArt source code and explain where in the Accused Product "data bases" are created "without reference to or knowledge of the object."  Because Nintendo refuses to drop its objections, this motion remains relevant.

## II. Nintendo Fails to Refute the Facts That Show Diligence and Lack of Prejudice.

Nintendo does not dispute:

(1) the Proposed Amendments accuse no new products [Dkt. No. 255 at 4, 12];

(2) the Proposed Amendments do not necessitate new or reopened discovery (Nintendo has not taken any discovery to date) [*Id*. at 15];

(3) Nintendo received the Proposed Amendments prior to any technical depositions on the accused products, which occurred in Japan in December 2014 [Dkt. No. 248]; and

(4) Nintendo will have had months to consider the Proposed Amendments before serving opening expert reports, which are now due on February 13, 2015. [Dkt. No. 255 at 15.]

Moreover, there is no basis for Nintendo's allegation that the identification of the Broadcom chip

1

in the Wii Remote as the "processor means" is a new position. [Dkt. No. 263 at 1 and 4.] Motion Games' original contentions disclosed that "[t]he Wii Console and the *Wii Remote Controller both contain computers (such as one or more processors),* one or more of which creates a data base of the Wii Sensor Bar using the sensed pattern of LEDs on the Wii Sensor Bar captured by the Remote Camera." [Dkt. No. 255-3 at 15, 16-17.] Nintendo does not deny that the Broadcom chip is a micro*processor* in the Wii Remote. Nintendo was on notice regarding the Broadcom chip, and has not alleged that any other components were identified for the first time in the Proposed Amendments. [Dkt. No. 255 at 12.] Thus, Nintendo cannot show prejudice.

Nintendo also does not dispute that Motion Games was diligent in pursuing discovery and amending its contentions. Specifically, Nintendo does not dispute:

(1) Nintendo did not produce any details of the PixArt chip's algorithms or operations prior to November 2014 [*Id*. at 6];

(2) Nintendo's witnesses professed to have no knowledge of the components of the PixArt ASIC, including whether it included a "processor" [*Id*. at 10-11];

(3) Motion Games diligently sought discovery from an unwilling Taiwanese third-party after Nintendo refused to produce the PixArt source code [*Id*. at 6-9]; and

(4) Motion Games timely amended its contentions after it obtained the PixArt source code in November 2014. [*Id*. at 9-10.]

Instead, Nintendo argues that Motion Games allegedly had all the information it needed for the Proposed Amendments before it inspected the PixArt source code. [Dkt. No. 263 at 2, 5-6, and 9-10.] This is nonsense. Nintendo's own deposition witnesses, who had access to the same documents produced by Nintendo in this case and who were involved in the development of the PixArt ASIC, repeatedly claimed not to have this knowledge. The lack of knowledge of these witnesses persisted, even when shown versions of the PixArt documents referenced by Nintendo. [*See* Dkt. No. 263 at 9 (referencing Exs. 14-16).]

Further, Motion Games' two experts and an attorney did not travel to Taiwan simply to

2

"confirm" its theories. The inspection was necessary "to determine . . . how the PixArt ASIC creates the data base." [Dkt. No. 255 at 5.] The PixArt source code citations and theories included in the Proposed Amendments are the direct result of that inspection. Among other things, the Proposed Amendments specifically cites portions of the HDL source code that disclose the algorithm for creating a data base. The Proposed Amendments demonstrate that the PixArt chip literally meets the claimed "processing means" or, alternatively, is at least an equivalent under the doctrine of equivalents. [*Id*.] These amendments could not have been made prior to PixArt's production of source code.

### III. Nintendo's General Claims of Prejudice Are Insufficient.

Nintendo vaguely alleges that *if* the Proposed Amendments had been made before Motion Games reviewed the PixArt source code, Nintendo "*could have* taken a different approach and made different compromises in the claim construction process"; "*could have* advocated a more narrow structure" to avoid infringement under DOE; and "*would have* presented [different] information and arguments to the Court . . . ." [Dkt. No. 263 at 3, 13 and 15.] Nintendo's only explanation of these hypothetical alternative positions is anemic. It simply alleges that it "would have" disputed that the data base is created "without reference to or knowledge of the object."

This argument fails for at least four reasons. First, Nintendo's *Markman* brief *did* argue against this construction. [Dkt. No. 155 at 8-9.] Second, the phrase "without reference to or knowledge of the object" *narrows* the claim scope. Nintendo does not explain how this could possibly prejudice an accused infringer. Third, Nintendo talks out of both sides of its mouth; its argument is flatly inconsistent with its baseless prosecution history estoppel (PHE) argument. [Dkt. No. 263 at 12-13.] Finally, the Court's claim construction Order moots Nintendo's opposition. After Motion Games filed its motion, the Court construed the term "creating a data base" and found that there was a disclaimer. [Dkt. No. 262 at 16.] Nintendo identifies no

additional argument or evidence that it would or could have made. In fact, in its objections to the Court's claim construction Order, Nintendo argued that its prior proposed constructions were correct. [Dkt. No. 269 at 5.] These proposed constructions *included* the disclaimer argument, using only slightly different language. [Dkt. No. 155 at 7.]

**IV. Nintendo's Original Bases For Opposing This Motion Are Still Frivolous.**

Nintendo originally opposed the Proposed Amendments on two grounds: (1) that Motion Games did not include its claim construction position for "creating a data base" in its claim charts; and (2) that Motion Games should not be able to amend its contentions to assert a DOE argument for the "processing means." Although Motion Games demonstrated why each position was baseless, [Dkt. No. 255 at 12-14], Nintendo refuses to concede.

***a. Argument 1: Motion Games Can Assert that the Previously Identified "Data Bases" are Created "Without Reference to or Knowledge of the Object."***

Nintendo cannot reasonably dispute that Motion Games properly identified the "data bases" created in the Wii Remote. [Dkt. No. 255 at 4.] Nor does Nintendo dispute that infringement contentions need not disclose claim construction positions. [*See Id*. at 12-13 (citing *EON Corp. IP Holdings, LLC v. Sensus USA Inc*., 2010 WL 346218, *2–*4 (E.D. Tex. 2010).] Thus, Nintendo cannot logically argue that Motion Games was required to include its position that the identified "data base" is created "without reference to or knowledge of the object" in its infringement contentions. Nintendo's position is particularly nonsensical where it knew Motion Games' position throughout the claim construction process. [Dkt. No. 142 at 6-7.]

But even assuming for the sake of argument that Motion Games was somehow required to provide its claim construction position in its infringement contentions, the Court's claim construction Order mooted Nintendo's continued opposition. The Court adopted Motion Games' construction that the claimed data base is created "without reference to or knowledge of the object." [Dkt. No. 262 at 16.] Nintendo cannot seriously argue that Motion Games should be

4

precluded from asserting that the data bases it identified nearly two years ago meet the Court's claim construction. Nintendo's refusal to withdraw this objection evidences bad faith.

### b. Argument 2: Nintendo Is Not Prejudiced by a DOE Argument Regarding the "Processor Means" Limitation.

Nintendo asserts that Motion Games' inclusion of a DOE argument for a previously identified component—almost three months before expert reports and ten months before trial—"dramatically" altered the infringement theory. [Dkt. No. 263 at 1.] This general assertion is unavailing. *See, e.g., International Development LLC v. Richmond,* 2011 WL 149859, *3 (D.N.J. 2011). Nintendo identifies no specific prejudice based on the Proposed Amendments: it neither identifies new discovery nor explains what alternative claim construction it "would have" advanced. Nintendo cannot avoid Motion Games' argument simply because it fears it.

Even assuming for the sake of argument that Nintendo had shown prejudice, the Court's Claim Construction Order obviates it. The Court construed the "processing means" limitation as invoking 35 U.S.C. §112 ¶6, which includes "structural equivalents." [Dkt. No. 262 at 20.] While Nintendo correctly observes that DOE covers "after arising technologies," whereas structural equivalents do not, this fact is irrelevant here: Nintendo does not and cannot contend that ASICs were developed after 2001, the issue date of the '607 patent. Thus, Motion Games is entitled to at least make the identical "equivalents'" amendments pursuant to P.R. 3-6.

### V. Nintendo's Attempt to Argue the Merits is Improper.

Nintendo's "futility" argument is baseless. [Dkt. No. 263 at 11-13]. First, this is not the time for substantive attacks on Motion Games' position. *See Linex Techs. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 713 (E.D. Tex. 2008). Second, Nintendo is wrong. Applicant's disclaimer related to the function of "creating a data base" (*i.e.* "without reference to or knowledge of the object"); he made no disclaimer related to the structure of the "processing means."

5

Dated: February 6, 2015        Respectfully submitted,

/s/ *Gregory P. Love*
Gregory P. Love
Texas Bar No. 24013060
**LOVE LAW FIRM, P.C.**
P. O. Box 948
Henderson, Texas 75653
Telephone:  (903) 690-7100
Facsimile:  (903) 392-2267
greg@lovetrialfirm.com

Michael A. O'Shea
Leonard C. Suchyta
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue NW
Washington, DC 21500
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
moshea@hunton.com
lsuchyta@hunton.com

Joshua M. Kalb
Andrew A. Stulce
**HUNTON & WILLIAMS LLP**
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308
Telephone: (404) 888-4000
Facsimile: (404) 888-4190
jkalb@hunton.com
astulce@hunton.com

Sona Rewari
**HUNTON & WILLIAMS**
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
Telephone:  (703) 714-7512
Facsimile: (703) 918-4018
srewari@hunton.com

D. Michael Underhill
Richard S. Meyer
Patrick M. Lafferty
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, NW

        Washington, DC 20015
        Telephone: (202) 237-2727
        Facsimile: (202) 237-6131
        munderhill@bsfllp.com
        rmeyer@bsfllp.com
        plafferty@bsfllp.com

*Attorneys for Plaintiff Motion Games, LLC*

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 6th day of February 2015.

                                        /s/ *Gregory P. Love*
                                        Gregory P. Love