# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **MOTION GAMES, LLC** § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **NINTENDO CO., LTD.;** *et al.* § <br> **Defendants.** § <br> § <br> § | Cause No. 6:12-cv-878-RWS-JDL <br><br> **JURY TRIAL DEMANDED** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Motion Games, LLC's ("Motion Games") Opposed Motion for Leave to Amend its P.R. 3-1 Infringement Contentions. ("MOTION") (Doc. No. 255). Defendants[1] filed a response ("RESPONSE") (Doc. No. 263), Motion Games filed a Reply ("REPLY") (Doc. No. 275), and Defendants filed a sur-reply ("SUR-REPLY") (Doc. No. 280). Having fully considered the arguments before the Court and for the reasons set forth herein, Motion Games' Motion for Leave to Amend Infringement Contentions is **GRANTED.**

## BACKGROUND

Motion Games proposes to include in its amended infringement contentions: (1) infringement under the doctrine of equivalents; (2) allegations that the "processing means" element of the patent-in-suit is present in the accused product "in the form of the PixArt Application-Specific Integrated Circuit ("PixArt ASIC"), the Broadcom chip located in the Wii Remote Controller, the IBM Broadway microprocessor in the Wii Console, or a combination thereof;" and (3) allegations that the PixArt ASIC in the Wii Remote Controller creates a database "without reference to or knowledge of the object . . ." and "another database is created

---
[1] The Defendants are Nintendo Co., Ltd. ("NCL"), Nintendo of America Inc. ("NOA"), Retro Studios, Inc. ("Retro"), Rent-A-Center, Inc. ("RAC"), and GameStop Corp. ("GameStop") (collectively "Defendants").

without reference to or the knowledge of the object by the Broadcom chip contained in the Wii Remote Controller when data from the PixArt ASIC is stored by the Broadcom chip." MOTION at 4-6; 255-1 at 4-6.

Motion Games filed the present motion after it was given limited access to source code possessed by third-party, Taiwan-based PixArt. In order to obtain the details of the PixArt chip's algorithms or operations, Motion Games was required to enter into a series of negotiations with PixArt, apply for and obtain a letters rogatory, and travel to Taiwan for a limited inspection of the source code. *See* MOTION at 7-8.

## APPLICABLE LAW

"The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun." *American Video Graphics, L.P. v. Electronic Arts, Inc.,* 359 F.Supp.2d 558, 560 (E.D. Tex. 2005). "Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 526, 528 (E.D. Tex. 2005). "[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman,* summary judgment, trial, and beyond." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F.Supp.2d 526, 527 (E.D. Tex. 2005).

Local Patent Rule 3–1 requires a party to provide infringement contentions setting forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims]

themselves." *STMicroelectronics, Inc. v. Motorola, Inc.,* 308 F.Supp.2d 754, 755 (E.D. Tex. 2004). However, "[i]nfringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof." *Realtime Data, LLC v. Packeteer, Inc .,* No. 6:08–cv–144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009).

A party may amend its infringement contentions upon a showing of good cause. *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 6:07–CV–559, 2009 WL 81874 at *3 (E.D. Tex. Jan. 12, 2009) (citing FED. R. CIV. P. 16(b); *Garmin, Ltd. v. TomTom, Inc.*, No. 2:06–cv–338, 2007 WL 2903843 at *5 (E.D. Tex. Oct. 3, 2007)). The good cause standard requires the movant to show that, "despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines." *Garmin S & W Enters., L.L.C. v. Southtrust Bank of Alabama,* 315 F.3d 533, 535 (5th Cir. 2003). The following factors are used to determine whether to allow a party to supplement infringement contentions: (1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007); *Garmin,* 2007 WL 2903843 at *6.

## DISCUSSION

### 1. *Diligence*

Defendants do not dispute that Motion Games diligently obtained and inspected the PixArt source code. Instead, Defendants argue that the information garnered from the PixArt source code was not necessary to make the proposed amendments and that Motion Games fails to show how review of the PixArt code information justifies the proposed amendments. RESPONSE at 2, 5-6. Furthermore, Defendants contend that Motion Games elected to pursue a theory of literal infringement instead of a doctrine of equivalents theory by asserting only

3

"creating a data base" as opposed to "creating a data base without reference to or knowledge of the object" in its infringement contentions. *Id.* at 9.

Defendants' position that the PixArt discovery was not necessary for the proposed amendments is not supported by the record. Inspection of the code was necessary:

> to determine . . . how the PixArt ASIC creates the data base. The PixArt source code citations and theories included in the Proposed Amendments are the direct result of that inspection. Among other things, the Proposed Amendments specifically cites portions of the HDL source code that disclose the algorithm for creating a data base. The Proposed Amendments demonstrate that the PixArt chip literally meets the claimed "processing means" or, alternatively, is at least an equivalent under the doctrine of equivalents.

REPLY at 3. Furthermore, statements made by Defendants' corporate representatives undermine Defendants' position that such information was publically available or unnecessary. For example, Mr. Akio Ikeda, NCL's corporate designee on the operation of the PixArt chip, when asked if anyone at NOA or NCL knew how the DPD sensor generates coordinates based on infrared lighting, responded, "People in the Nintendo group do not know. Only the manufacturer, PixArt, knows." Doc. No. 155-26, Ikeda Dep., 48:22-49:4.

Moreover, Defendants' contention that Motion Games is required to specifically identify how the PixArt code supports the proposed amendments is misplaced. Infringement contentions are not intended to act as a forum for argument about the substantive issues but rather serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim. *Linex Techs., Inc. v. Belkin Int'l, Inc.,* 628 F.Supp.2d 703, 706 (E.D.Tex.2008). While the proposed amendments do not address all of the intricacies of Motion Games' infringement theory, they provide sufficient notice to the Defendant of the infringement contentions by connecting the inspection of the PixArt source code to the proposed amendments via citations and with an outline of how the PixArt chip meets the "processing means" claim

element either literally or by doctrine of equivalents. *See* Doc. No. 255-1 at 4. The parties may address any disagreement regarding the sufficiency of the evidence to support the proposed contentions at an appropriate stage of this suit.

As such, Motion Games has shown that it diligently obtained the third-party discovery required for its proposed amendments and moved to amend its infringement contentions soon after inspection. Accordingly, this factor weighs in favor of permitting Motion Games to amend its infringement contentions.

### 2. *Importance*

Defendants contend that Motion Games' proposed amendment to include the doctrine of equivalents for the "processing means" claim element is of no importance because prosecution history estoppel makes such a position futile. RESPONSE at 11-13. Again, infringement contentions are not intended to be a forum for adjudicating the merits of the plaintiff's contentions. *Linex*, 628 F. Supp. 2d at 713. Defendants' futility argument is, therefore, misplaced.

After reviewing the PixArt source code, Motion Games added a doctrine of equivalents allegation to its infringement contentions and the allegation that the Wii includes not one but two data bases that both store information "without reference to or knowledge of the object." MOTION at 4-5. The doctrine of equivalents allegation provides Motion Games an alternate means to prove infringement. Motion Games also provides additional details on the operations of the Wii remote and incorporates its claim construction position for "data base" into its infringement contentions. Accordingly, the amendments are important, and this factor weighs in favor of allowing the amended contentions.

### 3. *Potential Prejudice & Ability to Cure Prejudice*

Defendants argue that they will be unfairly prejudiced by Motion Games' proposed amendments. First, Defendants assert Motion Games will receive an unfair procedural advantage by changing its infringement contentions after the *Markman* process. RESPONSE at 13. Defendants argue that if they had known of Motion Games' proposed amendments prior to the *Markman* process, they could have taken a different approach and made different compromises. *Id.* Specifically, Defendants assert that they "could have presented argument to the Court concerning the alleged disclaimer in the prosecution history on which Motion Games based its inclusion of the 'without reference to or knowledge of the object' language." *Id.* Second, Defendants argue that had they known Motion Games intended to assert the doctrine of equivalents with respect to the term "processing means" they could have advanced a "more narrow structure, consistent with the disclosure in the patent, to narrow the range of equivalents." *Id.* at 15.

Defendants' claim of prejudice is not supported by the record. First, Defendants already argued against using the language "without reference to or knowledge of the object" in the construction of the claim term "create a data base for an object." Doc. No. 155 at 8-9. The language was included in Motion Games' proposed claim construction for the term "creating a data base of said object," and the construction was adopted by the Court.[2] Doc. No. 262 at 15-16. Second, Defendants' claim of prejudice with regard to the claim term "processing means" has been obviated. The Court recently ordered the parties to file supplemental claim construction briefing on the term "processing means." Doc. No. 295 at 2. Defendants will have an opportunity to advance an amended position with respect to this term before the Court in its

---

[2] The Court does not see a need for supplemental claim construction of this term. However, in the event that Defendants can identify a specific claim construction problem caused by the amended infringement contentions, Defendants may request supplemental claim construction.

supplemental briefing. As such, Defendants fail to identify any specific danger of unfair prejudice. Therefore, this factor weighs in favor of granting leave to amend.

## **CONCLUSION**

The relevant factors in this case favor granting the Motion for Leave to Amend Infringement Contentions. Therefore, Motion Games' Motion to Amend its P.R. 3-1 Infringement Contentions (Doc. No. 255) is **GRANTED**.

**So ORDERED and SIGNED this 16th day of April, 2015.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE