# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| MOTION GAMES, LLC<br><br>                    Plaintiff,<br><br>          v.<br><br>NINTENDO CO., LTD.; NINTENDO OF AMERICA, INC.;  RETRO STUDIOS, INC.; RENT-A-CENTER, INC.; AND GAMESTOP CORP.<br><br>                    Defendants. | CIVIL ACTION NO.:  6:12-CV-878-LED |

**DEFENDANTS' AMENDED INVALIDITY
CONTENTIONS PURSUANT TO P.R. 3-6(a)**

In accord with P.R. 3-6(a), responsive to the Court's January 16, 2015 claim construction order (Dkt. 262) ("Markman Order") and to Plaintiff Motion Games, LLC's Supplemental and Third Amended Infringement Contentions for Defendants Pursuant to P.R. 3-6(a) served on February 19, 2015 ("Third Amended Contentions"), Defendants Nintendo Co., Ltd., Nintendo of America, Inc., and Retro Studios, Inc. (collectively "Defendants") hereby submit their amended invalidity contentions identifying prior art and other grounds that invalidate the asserted claims of U.S. Patent No. 6,167,607 ("the '607 Patent").

The Defendants' invalidity contentions address the claims of the '607 patents asserted against Defendants in the Third Amended Contentions.  Thus, the Defendants' amended invalidity contentions take into consideration the same features and capabilities of

the prior art disclosures as embraced by the claim scope set forth by in the Markman Order and necessary to allegedly read the asserted claims on the accused products in accordance with the Third Amended Contentions.  However, none of Defendants' amended invalidity contentions should be understood as any acquiescence in, admission to or adoption of any claim construction or interpretation of any claim construction set forth in the Markman Order to which Defendants objected or as may be asserted in the Third Amended Contentions.   In other words, these invalidity contentions are based on Defendants current understanding of the claim scope set forth in the Markman Order and being asserted by Motion Games based on the Third Amended Contentions, and do not necessarily reflect what Defendants' believe is the proper claim scope based on the claim language.

Further, and notwithstanding Defendants' invalidity contentions regarding compliance with 35 U.S.C. § 112, Defendants' invalidity contentions regarding the prior art also take into consideration an understanding of the patents necessary for those patents to comply with 35 U.S.C. § 112.  Where, in the following claim charts, a feature of a prior art reference is not specifically identified as corresponding to a claimed limitation, that lack of specific identification is not intended as, and should not be regarded as, any admission or concession by Defendants that such prior art reference does not embody the claimed limitation.

In its invalidity charts, Defendants have cited representative portions of identified references, even where a reference may contain additional support for a particular claim element.  Persons of ordinary skill in the art at the time of filing of the patents-in-suit knew to read references as a whole, and in the context of other publications and literature and the general knowledge in the field.  Defendants may rely on all such information, including

2

uncited portions of the prior art references listed herein, and on other publications and expert testimony, to provide context and as aids in understanding and interpreting the listed references, or to establish that a person of ordinary skill in the art would have been motivated to modify or combine any of the cited references so as to render the claims obvious.  Additionally, citations to a particular figure in a prior art reference encompass all text relating to the figure, and citations to text encompass all figures relating to that text.

On information and belief, each listed publication or invention became prior art at least as early as the issue, publication, filing or priority dates given.  Defendants incorporate, in full, all prior art references cited in the '607 patent and their prosecution histories, including without limitation the prosecution histories of any patents and/or applications to which the '607 patent claims priority.

At this stage in the case prior to the close of discovery, Defendants reserve the right to modify, amend, or otherwise supplement these invalidity contentions as additional information is discovered or becomes available.  Defendants additionally reserve the right to identify to supplement its disclosures or contentions for the following reasons:

(i) Defendants' position on the invalidity of particular claims will depend on how those claims are finally construed by the Court.  Because objections to and a motion to reconsider the claim constructions rendered by the Court are pending, Defendants cannot take a final position on the bases for invalidity of the claims because the Court may modify its claim constructions.

(ii)  Defendants have not yet completed their discovery from Plaintiff.

(iii)  Plaintiff may revise or amend its infringement contentions as discovery proceeds and/or after the Court finally construes the claims and the positions that Plaintiff

takes in any revised or modified infringement contentions may impact the positions that

Defendants have taken in these contentions and warrant revision or modification.

(iv) Expert discovery has not yet been completed and such discovery may also

reveal information that affects the disclosure and contentions herein.

Defendants expressly reserve the right to amend these contentions and disclosures

after the Court has finally resolved all objections to the relevant claim terms.  Defendants

reserve the right to prove the invalidity of the asserted claims on bases other than those

required to be disclosed in these disclosures and contentions pursuant to P.R. 3-3.

## I.  INVALIDITY CONTENTIONS REGARDING U.S. PATENT NO.  6,167,607

Below is an identification of the references that Defendants contend anticipate

(pursuant to 35 U.S.C. § 102) and/or render obvious (pursuant to 35 U.S.C. § 103) one or

more of the asserted claims of the '607 patent should there be a determination that, contrary

to Defendants' assertions that the claims are invalid under 35 U.S.C. §112, the claims as

construed by the Court are definite, supported by the written description and enabled.

### A.  SECTION 102 ANTICIPATION REFERENCES

The following table identifies references that anticipate one or more of the asserted

claims of the '607 patent should there be a determination that, contrary to Defendants'

assertions that the claims are invalid under 35 U.S.C. §112, the claims as construed by the

Court are definite, supported by the written description and enabled.  The identified claim

charts in the table below show what specific claims are anticipated by each item of prior art

and where in each item of prior art each element of each asserted claim is found.

| EXHIBITS | CLAIM CHART | PRIOR ART REFERENCES | ISSUE/PUBLICATION DATES |
|---|---|---|---|
| Exhibit 27 | 327A | U.S. Patent No. 4,238,828 (Hay) | December 9, 1980 (filed October 6, 1978) |
| Exhibit 28 | 328A | U.S. Patent No. 4,137,566 (Haas) | January 30, 1979 |
| Exhibit 32 | 332A | "Implementing a Real Time Computation and Display Algorithm for the Selspot System" (Avram K. Tetewsky), Master's Degree Thesis, Massachusetts Institute of Technology, May 1978. | Submitted May 1978 (received at Archives Massachusetts Institute of Technology July 28, 1978) |

## B.     SECTION 103 OBVIOUSNESS COMBINATIONS

The table below identifies combinations of prior art references that Defendants contend render obvious one or more of the asserted claims of the '607 patent should there be a determination that, contrary to Defendants' assertions that the claims are invalid under 35 U.S.C. §112, the claims as construed by the Court are definite, supported by the written description and enabled.  The identified claim charts in the table below show what specific claims are rendered obvious by each combination of prior art references and where in each item of prior art each element of each asserted claim is found, as well as how the references would be combined.

| EXHIBITS | CLAIM CHART | PRIOR ART COMBINATIONS | ISSUE/PUBLICATION DATES |
|---|---|---|---|
| Exhibit 27 | 380A | U.S. Patent No. 4,238,828 (Hay) | December 9, 1980 |
| Exhibit 28 | | U.S. Patent No. 4,137,566 (Haas) | January 30, 1979 |

## C.     MOTIVATIONS TO COMBINE SECTION 103 COMBINATIONS

For each combination of references identified here, Defendants hereby identify a "motivation" for one of ordinary skill in the art at the time of the alleged invention of the '607 patent to combine those references.  The "motivation" to combine is identified in view

5

of the Supreme Court decision in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), and is not limited to any specific test or analytical framework for determining obviousness (such as the "teaching, suggestion, or motivation" test).

The Hay and Haas combination identified in Section B above and in the associated claim chart (*see* Claim Chart 380A) relies on the substitution or incorporation of elements that were known in the prior art, as described in the cited references.  Hay and Haas would have been art that a person skilled in the art would have referred to in addressing the problems addressed by the '607 patent, providing a reason for combining that art in the manner indicated in this report.  The art is analogous as either in the same field of endeavor or the references are reasonably pertinent to the problem faced by the inventor.  For example, the '607 patent lists on its face U.S. 4,631,676 to Pugh, which evidences the inventor's awareness of the commonality between computer vision systems such as Hay and motion study systems such as Haas.  Also, the combination of the familiar elements claimed in the '607 patent according to known methods or systems would have been obvious because it does no more than yield predictable results.  A person of ordinary skill in the art would have been motivated to combine or adapt these known methods or systems.  Hay and Haas describe methods and systems that were known to offer what is asserted and claimed in the '607 patent to constitute improvements over the prior art.

Motivation to combine may also be found in the "nature of the problem." As framed in the "Background of the Invention" section of the '607 patent, the alleged problem that the named inventor set out to "solve" included providing target points on the part that are "easily discernable and unambiguous, after processing using rapid devices and other high speed analysis software."  ('607 patent 1:48-50).  Hay and Haas address that problem and,

6

as such, one of skill in the art would have been motivated to combine them in the manner discussed in this report to solve the problem.

While not necessary, a motivation to combine may also be found in the prior art references themselves.  One of ordinary skill in the art would be motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference.  As the cited references for each patent herein generally relate to similar technology involving optically based tracking systems, and each one describes at least some of the advantages and features it provides, one skilled in the art would have looked to any one of the cited references in order to modify or improve any other one of the cited references.

The references also describe the elements of the asserted claims in sufficient detail – whether the structure and function or just the function with the structure known to one of ordinary skill in the art.  In each instance, a person of ordinary skill in the art could have modified the device described in one reference using the substituted or incorporated elements from the other reference, and the results of the substitutions and incorporations would have been predictable.  Where substitutions or combinations have been made, each of the substituted or combined elements is similar to and/or compatible with the original elements and provides similar functionality and/or enhancement.  It would have been predictable to one skilled in the art that the modified device or system, i.e., the device or system resulting from the combined teachings of the applied references, could be substituted or incorporated into the original devices or systems and used to provide the claimed structure or functionality without substantially altering the purpose of the original devices or systems, or their elements.  Further, the references demonstrate that a person of

ordinary skill in the art already knew how the substituted or incorporated elements would operate and how they would be made.

The '607 patent is directed to optically-based tracking systems.  The claimed subject matter would have been obvious to one of ordinary skill in the field of motion tracking, as well as to one of ordinary skill in the field of video game system development. For example, anyone working in the fields of motion tracking and or gaming input devices would have been aware at the time of the alleged inventions of the substantial amount of research that had been done in these and related fields, particularly with respect to at least:

- Hand-held input devices;

- Optical sensors, including CCD cameras, photo detectors, and the like;

- Camera-based position and orientation determining devices and systems;

- Electro-optical pattern sensing and data bases

Further, at least by the time of the alleged invention of the '607 patent, there was a trend toward the miniaturization of electronics that would have provided any developer with a readily available toolbox of components to develop handheld devices having functionality that previously would have required a much larger embodiment.  Further, well before the date of the alleged invention of the '670 patent, the introduction of robots, control systems for robots, optical inspection and tracking systems, the SELSPOT and Track systems, light or laser guns, c.c.d. sensors, photoelectric sensors, TV cameras and other electro-optical systems as well as laser and LED illumination systems and computers provided any developer with a readily available toolbox of components to develop a method and system for locating, tracking and storing data on targets on robots or objects using TV cameras or other optical electric devices.  As a result, those skilled in the art would have readily appreciated various known features and systems of all the cited

references herein and would have looked to the teachings of either one of the references to modify or enhance the teaching of the other reference.

Additional "motivations" to combine are identified at the end of the claim chart 380A.  Still additional motivations to combine may exist.  For example, to the extent one might argue that Hay does not disclose the claimed discrete targets, the discrete targets of Hass could be easily substituted for the target plate in Hay to achieve the claimed invention.  A person of ordinary skill in the art would have been motivated to substitute the discrete targets of Haas for the target plate in Hay in order, for example, to expand the options for target location, resulting in a more versatile system.  Moreover, persons of ordinary skill in the art generally read a prior art reference as a whole and in the context of other publications and literature, physical embodiments and knowledge in the field of art.

### D.    <u>INVALIDITY UNDER 35 U.S.C. §112</u>

In accordance with Patent P.R. 3-3(d), Defendants identify exemplary bases for invalidating various claims of the '607 patent for lack of an adequate written description, lack of enablement, and indefiniteness.  Defendants do not here address the failure of ancestor applications to support the claims as required for the claims to gain the benefit of the filing date(s) of those ancestor applications under 35 U.S.C. § 120.  Nor do Defendants address the "regards the invention," "best mode" or other disclosure or claiming requirements not within the disclosure requirements of P.R. 3-3(d).  Defendants reserve their right to assert invalidity based on any and/or all other grounds not referenced herein and not required to be disclosed in these contentions.

The Defendants' current invalidity contentions based on lack of written description, lack of enablement, and indefiniteness are set forth below on a claim-by-claim basis.  In

each instance of indefiniteness, the claims do not particularly point out and distinctly claim the subject matter of the invention.  In each instance of failing the written description requirement, the patent fails to demonstrate that the applicant was in full possession of the claimed subject matter on the alleged effective filing date.  In each instance of failing the enablement requirement, the patent fails to teach one of ordinary skill in the art as of the alleged effective date how to practice the full scope of the claimed subject matter without undue experimentation.

Claims 1 and 25, and claims 2, 16, 17, 26, 34, 40 and 41 due to their dependency therefrom, are invalid as indefinite in view of the Court's claim construction recently set forth in the Markman Order.  Specifically, the Court construed "processing means" as a means-plus-function term under 35 U.S.C. § 112(6) construing the function as "creating a data base of said object using said sensed pattern of said first target and second target" and the structure as "a computer programmed with the use of well known photogrammetric equations, to determine the location of the targets, and equivalents."  (MarkmanOrder at 17-20, 25).

With respect to a means plus function claim, the law requires that "[i]f the function is performed by a general purpose computer or microprocessor, then the specification must also disclose the algorithm that the computer performs to accomplish that function.  Failure to disclose the corresponding algorithm for a computer-implemented means-plus-function term renders the claim indefinite."  *Triton Tech of Texas, LLC v. Nintendo of America, Inc*., 753 F. 3d 1375, 1378 (Fed. Cir. 2014) (citations omitted).  "[A] bare statement that known techniques or methods can be used does not disclose structure." (*Id.* at 1379) ("[t]he fact

that various…algorithms may have been known to one of ordinary skill in the art does not rescue the claims.").

The term "a computer programmed with the use of well known photogrammetric equations to determine the location of the targets, and equivalents" encompasses a broad class of possible methods and corresponding algorithms used in computer-based photogrammetry.  Such methods/algorithms may include, for example, the use of projective transforms, computation of the Fundamental Matrix, iterative methods (*e.g.*, RANSAC), and non-linear optimization (*e.g.*, bundle adjustment).  The '607 patent specification lacks any disclosure of any particular algorithm (i.e., the step-by-step procedure for performing the claimed function) that the computer performs to accomplish the function of "creating a data base of said object using said sensed pattern of said first target and second target".  The Court's citations in the Markman Order to the '607 Patent, Cols. 24:15-18, 4:24-27, 5:5-12, 24:62-65, 37:58-61 (Markman Order at 20), referencing USP 4,219,847 to Pinkney, do not provide the required structure.  Merely incorporating prior art by reference is insufficient under the law to "provide corresponding structure for a means-plus-function limitation."  *See Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd*., 599 F.3d 1308, 1317 (Fed. Cir. 2010).  Rather, "Section 112 requires that the corresponding structure must be 'described in the specification.'"  (*Id.*).  Pinkney does not provide corresponding structure in any event—it does not provide a step-by-step procedure for performing the claimed function.  Since there is no corresponding structure in the '607 patent specification under the Court's construction of "processing means", claims 1, 2, 16, 17, 25, 26, 34, 40 and 41 are invalid as indefinite.

11

Claims 1 and 25, and claims 2, 15, 16, 17, 26, 34, 39, 40 and 41 due to their dependency therefrom, are invalid for failing the written description and enablement requirements with respect to the claimed "processing means" in view of the Court's claim construction set forth in the Markman Order.  Specifically, the Court construed "processing means" as a means-plus-function term under 35 U.S.C. § 112(6) construing the function as "creating a data base of said object using said sensed pattern of said first target and second target" and the structure as "a computer programmed with the use of well known photogrammetric equations, to determine the location of the targets, and equivalents." (Markman Order at 17-20, 25).  The specification does not teach this means-plus function limitation under the Court's claim construction.  The Court's citations in the Markman Order to '607 Patent, Cols. 24:15-18, 4:24-27, 5:5-12, 24:62-65, 37:58-61 (Markman Order at 20), referencing USP 4,219,847 to Pinkney, do not provide the required disclosure. Further, the specification provides no direction or guidance for, and no working examples of, using "well known photogrammetric equations" for "creating a data base of said object using said sensed pattern of said first target and second target" under the Court's construction of "creating a data base of said object" as "storing as data a sensed pattern representative of a physical object without reference to or knowledge of the objet itself." (Markman Order at 15-16, 25).

Given this lack of disclosure, one of ordinary skill in the art could not practice the full scope of these claims without undue experimentation.  Furthermore, one of ordinary skill reading the original patent application would not have recognized that it describes the full scope of these claims (as asserted by Plaintiff), nor that Mr. Pryor actually possessed that full scope by the filing date thereof.

Claims 1 and 25, and claims 2, 16, 17, 26, 34, 40 and 41 due to their dependency therefrom, are invalid as indefinite and for failing the written description and enablement requirements with respect to the claimed "a database for an object" and "a database of said object" as construed by the Court. Specifically, the Court construed "creating a data base of an object" and "creating a data base for an object" as "storing as data a sensed pattern representative of a physical object without reference to or knowledge of the objet itself." (Markman Order at 15-16, 25). The specification does not teach this limitation and in particular does not teach that the "data base" is "without reference to or knowledge of the object itself."

If the "data base" (pattern) did not reference or have knowledge of the physical object, it could not be used to handle the physical object or track changes to the physical object, which is the entire point of the `607 patent. For example, referring to Figure 5 of the `607 patent, consider the scenario described by Column 10:32–43:

> Now, take this case one step further, where a formed part 702 such as a deck lid has **dot points 700** on it. This formed part is then to have a **part 712 welded to its rear** by spot weld 35 robot 716, which part 712 is the inner stiffner of the deck lid. The dots 700 are viewed by a camera means 714 and not only used in the handling process of handler 718 to move this part 712 into place also using camera means 714, **but also to position the welded inner part 712 relative to part 702**. These dots are furthermore used to check after welding whether or not certain distortions have occured beyond limits in the welding process and to establish the new data base for the part.

`607 patent at Col. 10:31-42 (emphasis added). If the data base did not reference or have knowledge of the physical object, and thus had no information concerning the relationship between the dot points 700 and the physical formed part 702 ("such as a deck lid") as

shown in Figure 5, the system would be unable to "position the welded inner part 712 relative to part 702" in any predicable/reliable fashion.

For example, if the steel blank 702 was rotated 45 degrees, or completely the wrong size or shape, the dot points 700 would still be applied as indicated in Fig. 5, and they would appear the same in the camera.  And yet with no known correlation between the dot points 700 and the physical formed part 702, the weld on the formed part 702 would be attempted regardless, resulting in a completely wrong part or weld. To function the system must either (a) be assured that the physical formed part 702 was the correct shape and size, and positioned and oriented in a known way with respect to the dot points 700, or (b) be able to detect the shape, size, position, and orientation of the physical formed part 702 with respect to the image of the dot points 700 in the camera. In either case there is (must be) a correlation between the "data base" (e.g., the dot points 700) and the physical object.

In the embodiment shown in Figure 4a of the '607 patent, an object is guided into an opening.  *See* '607 patent at Col. 2:22-28, Fig. 4a.  An object could not be guided into the opening as shown in the embodiment of Figure 4a without requiring or resorting to correspondence between targets in the sensed pattern or data base and the geometric feature of the opening.  One has to know the relationship or correlation between the locations of the target points in the data base and the location of the opening in order to guide an object into the opening.  With the knowledge of the relationship between the targets and the opening, a computer could be used to guide the object into the opening.  Without the knowledge of the relationship between the targets and the opening, the computer would not know where the opening was and cannot guide the object into the opening.  The "data base" disclosed in the '607 patent thus requires that data is stored with reference to or

14

knowledge of the object itself because, in order to handle an object, there has to be some correlation between the data base and the object.

There is no disclosure of a data base without reference to or knowledge of the object or how such a data base could be used in the system described in the '607 patent to handle or assemble parts or objects.  One of ordinary skill in the art could not practice the full scope of these claims without undue experimentation.  Furthermore, one of ordinary skill reading the original patent application would not have recognized that it describes the full scope of these claims (as asserted by Plaintiff), nor that Mr. Pryor actually possessed that full scope by the filing date thereof.

Claim 34 is invalid as indefinite and for failing the written description and enablement requirements with respect to the claimed "controls a function related to said object based upon said created database"  given the Court's construction of "data base" to be "without reference to or knowledge of the object itself."  (Markman Order at 15-16, 25).  The specification does not teach this limitation.  The specification in fact teaches the contrary.  For example, as set forth in the disclosure related to Figure 5:

> Furthermore, this new data base can be utilized in the actual handling of the part between stations of a press line, for example, as long as it is known what to anticipate in terms of what it is.

'607 patent at 10:23-26.  Thus, in order to control a function related to an object, such as handling a part on a press line as disclosed in Figure 5, using the "data base," the "data base" would have to have knowledge of what the object or part is.  One of ordinary skill in the art could not practice the full scope of this claim without undue experimentation. Furthermore, one of ordinary skill reading the original patent application would not have

recognized that it describes the full scope of this claim (as asserted by Plaintiff), nor that Mr. Pryor actually possessed that full scope by the filing date thereof.

### D.     <u>INVALIDITY UNDER 35 U.S.C. §101</u>

Although invalidity of the asserted claims based on 35 U.S.C. §101 is not required to be  disclosed in these disclosures and contentions pursuant to P.R. 3-3, Defendants hereby provide notice that they assert that claims 1 and 25, and claims 2, 16, 17, 26, 34, 40 and 41 that depend therefrom, are invalid for claiming patent ineligible subject matter under 35 U.S.C. § 101 in accord with the Supreme Court's recent holding in *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct 2347, 2354 (2014), and given the Court's claim constructions.

In *Alice*, the United States Supreme Court has interpreted section 101 as containing "an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct at 2354.  In *Alice* and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1296-97 (2012), the Supreme Court established a two-part test for determining whether a claim falls into one of the exceptions, and is therefore patent-ineligible.  The Court first "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice,* 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1296-97).  If they are, the Court then considers the elements of the claim -- both individually and as an ordered combination -- to determine whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea.  *Id*.  The Supreme Court has described the second inquiry as "a search for an inventive concept -- *i.e*., an element or combination of elements that is sufficient to

ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (internal quotation marks omitted, alteration in original).

The abstract idea in independent claims 1 and 25 of the '607 patent is collecting and storing data. As claims 1 and 25 consist of two just steps or elements, electro-optically sensing or collecting data, and creating a data base or storing data, there are no additional elements that transform the claims into the application of the abstract idea. There is thus no element among the two claimed or the combination of the two elements that is sufficient to ensure that the '607 patent in practice amounts to more than the abstract idea of sensing and storing data.

The construction of the "processing means" element of the alleged invention to require the structure of "a computer programmed with the use of well known photogrammetric equations, to determine the location of the targets, and equivalents" (Markman Order at 17-20, 25) also does not, transform the invention from being an abstract idea to the application of the abstract idea. The "use of well known photogrammetric equations" is itself an abstract idea, and by definition a "well known" one. Simply by using a computer to implement the abstract ideas of sensing and storing data and using well known equations to do so, does not transform such abstract ideas into an inventive application of such ideas. There is nothing novel or inventive about sensing and storing data and using well known photogrammetric equations to do so.

Example 5 of "Examples: Abstract Ideas" recently published on the U.S. Patent and Trademark Office official website, provides further support for concluding that the claims of the '607 patent are invalid for claiming patent ineligible subject matter under 35 U.S.C. § 101.

Lastly, as stated above, Defendants reserve their right to supplement these contentions based upon the receipt of additional discovery, including, but not limited to, if discovery establishes that certain claims are not entitled to claim priority from predecessor applications and/or to Plaintiff's proffered conception dates, on-going investigations, any modification to the claim construction by this Court, and as otherwise permitted under the rules of this Court.

Dated: March 12, 2015                          Respectfully submitted

By: /s/  Barry J. Coyne_____

Trey Yarbrough Bar No. 22133500
Yarbrough Wilcox Gunter, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com

Brian D. Roche (IL Bar No. 6183795)
(admitted pro hac vice)
Email: broche@reedsmith.com
Jennifer Yule DePriest (IL Bar No 6272137)
(admitted pro hac vice)
Email: jdepriest@reedsmith.com
Vanessa Marti Heftman (IL Bar No. 6283464)
(admitted pro hac vice)
Email:vheftman@reedsmith.com
Keyonn L. Pope (IL Bar No. 6301921)
(admitted pro hac vice)
Email: kpope@reedsmith.com
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6400

Barry J. Coyne (PA Bar No. 77007)
(admitted pro hac vice)
Email: bcoyne@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue Pittsburgh, PA
15222-2716
Telephone: +1 412 288 3131
Facsimile: +1 412 288 3063

**Counsel for Defendants Nintendo Co., Ltd., Nintendo of America Inc., and Retro Studios, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of March, 2015, the foregoing Defendants' Amended Invalidity Contentions Pursuant To P.R. 3-6(a) were served on Plaintiff's counsel of record by electronic mail.


By: <u>*/s/  Barry J. Coyne*                </u>